Adam Nilsson
Sandy OR 97055
541-908-5385

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| ADAM DAVID NILSSON, an individual, | Case No.: 2:19-cv-01250-SU |
| Plaintiff | |
| v. | SECOND AMENDED COMPLAINT FOR: |
| | Civil Action (28 U.S.C. § 1331) |
| BAKER COUNTY, OREGON, | Retaliation for First Amendment Conduct |
| BAKER CITY, OREGON, | Fourth Amendment Violations |
| TRAVIS ASH, an individual, | Second Amendment Violations |
| WYN LOHNER, an individual, | Deprivation of Due Process (42 U.S.C. § |
| JEFRI VAN ARSDALL, an individual, | 1983) |
| GABRIEL MALDONADO, an individual, | FOIA Violations (5 U.S.C. § 552) |
| WILL BENSON, an individual, | |
| ERIC COLTON, an individual, | DEMAND FOR JURY TRIAL |
| SHANNON REGAN, an individual, | |
| and Does 1-30, | |
| Defendants. | |

_____

**INTRODUCTION**

1.       This Complaint concerns unchecked discretion that Baker County and Baker City have bestowed upon law enforcement, and abuses that unchecked discretion fosters.

2.       This Complaint concerns misconduct by deputies Gabriel Maldonado ("Maldonado") and Jefri Van Arsdall ("Van Arsdall") at Lime, Oregon, and retaliation resulting from Plaintiff's protected speech pertaining to law enforcement officer misconduct, and other protected speech and speech activities.

3.       Defendants, have deprived Plaintiff of civil rights under the First, Second, Fourth and Fourteenth Amendments to the United States Constitution.

4.       Defendants have committed Freedom of Information Act ("FOIA") violations.

**JURISDICTION AND VENUE**

5.       This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §1983, 28 U.S.C. §1331, 28 U.S.C. §1343(3), 5 U.S.C. § 552. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over Plaintiff's state law claims, as those claims form part of the same case or controversy under Article III of the United States Constitution.

6.       Venue is proper in this Court under 28 U.S.C. §1391(b) because Plaintiff had resided in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

7.       This Complaint has been filed in the Pendleton Division pursuant to Local Rule 3-2 because a substantial part of the events giving rise to Plaintiff's claims occurred in Baker County, Oregon.

**PARTIES**

8.      Plaintiff Adam Nilsson ("Plaintiff"), an individual, was at all times during which the wrongful acts alleged occurred, serving on Baker City Council. Plaintiff was, at all times during which the wrongful acts alleged occurred, serving on the Baker City Public Art Commission.

9.      Plaintiff was, at all times during which the wrongful acts alleged occurred, a resident of Baker City, Oregon.

10.      At all relevant times, Defendant Baker County has been a county in the State of Oregon.

11.      At all relevant times, the City of Baker City has been an incorporated city in Baker County, Oregon, located within the State of Oregon.

12.      At all relevant times, Defendant Travis Ash ("Ash") has been the Sheriff of Baker County, Oregon. Defendant Ash is sued in his individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983 and 5 U.S.C. §552. Defendant Ash is domiciled in Oregon. Defendant Ash is the final policymaker for Defendant Baker County in matters pertaining the Baker County Sheriff's Office ("BCSO"). At all relevant times, Defendant Ash acted under color of state law.

13.      At all relevant times, Defendant Wyn Lohner ("Lohner") was the final policymaker for Defendant Baker City in matters pertaining to BCPD. At all relevant times, Defendant Lohner was either BCPD Chief of Police. At all relevant times, Lohner was domiciled in Baker County, Oregon. Defendant Lohner is sued in his individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983. At all relevant times, Lohner acted under color of state law.

14.     At all relevant times, Defendant Shannon Regan ("Regan") was an officer of BCPD. Defendant Regan is sued in her individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983. Defendant Regan is domiciled in Baker County. At all relevant times, Defendant Regan acted under color of state law.

15.     At all relevant times, Defendant Maldonado was a deputy of BCSO. Defendant Maldonado is sued in his individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983. Defendant Maldonado is domiciled in Baker County, Oregon. At all relevant times Defendant Maldonado acted under color of state law.

16.     At all relevant times, Defendant Will Benson ("Benson") was a deputy of BCSO. Defendant Benson is sued in his individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983. Defendant Benson is domiciled in Baker County, Oregon. At all relevant times Defendant Benson acted under color of state law.

17.     At all relevant times Defendant Eric Colton ("Colton") was a deputy of BCSO. Defendant Colton is sued in his individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983, 42 U.S.C. §1985 and 28 U.S.C. § 4101. Defendant Colton is domiciled in Baker County, Oregon. At all relevant times Defendant Colton acted under color of state law.

18.     At all relevant times Defendant Van Arsdall was a deputy of BCSO. Defendant Van Arsdall is sued in his individual capacity and is a "person" subject to suit within the meaning of 42 U.S.C. §1983. Defendant Van Arsdall is domiciled in Baker County, Oregon. At all relevant times Defendant Van Arsdall acted under color of state law.

## BACKGROUND

### Deputys' Unprofessional Behavior at Lime, Oregon

19.     Plaintiff alleges misconduct and unconstitutional behavior by Baker County Sheriff's Office ("BCSO") deputies on August 1, 2017.

20.     On the afternoon of August 1, 2017, Plaintiff went to the abandoned facility at Lime, Oregon, with a friend, Ashley Schroder ("Schroder") in order to photograph an art exhibit entitled "Thrashbird's Valley of Secret Values."

21.     As Plaintiff and Schroder prepared to leave, an unprofessional interaction with Maldonado began to occur. As the unprofessional encounter proceeded, Plaintiff asked Schroder to use her iPhone to take video of the encounter. Maldonado unlawfully stopped the video from being recorded.

22.     Maldonado caused the video to be stopped, and handcuffed Plaintiff and Schroder for several hours. During the interaction, Van Arsdall arrived.

23.     Unprofessional and unconstitutional interaction continued until around midnight. Plaintiff and Schroder were held without explanation and without charge for many hours.

24.     Before and during the interaction, Plaintiff's motorcycle saddlebags, his person, and his handbags, were searched without a warrant and without consent. Plaintiff's concealed handgun, and concealed handgun license were also seized.

25.     Maldonado and Van Arsdall used coercion and subterfuge to obtain consent for the search after the fact.

26.     Maldonado's report regarding the incident at Lime is fabricated and false.

27.     Maldonado's false report deprived Plaintiff of rights.

28.     Maldonado's bad stop and false report deprived Plaintiff of due process, violated Plaintiff's civil rights, and set in motion a series of transactions that led to further violations and caused Plaintiff harm.

**Formal Complaint Made to Ash**

29.     On August 2, 2017, Plaintiff and Schroder made a formal complaint in person to Ash about deputy misconduct, etc., at Lime.

30.     Plaintiff engaged in free speech activities subsequent to complaining to Ash.

**RETALIATION AGAINST PLAINTIFF**

**Retaliatory Search Occurs**

31.     On August 9, 2017, searches of Plaintiff's person, his residence, his property, and his vehicles were conducted by Ash and Baker County Sheriff's Deputies. BCPD officers also participated in the search.

32.      Fourth Amendment violations occurred during and/or as a result of the search. The search was retaliatory and meant to chill Plaintiff's protected speech. The search exceeded allowed parameters, and was unreasonable.

33.     During the search, Ash recorded private video of Plaintiff's property, household interior, personal papers and effects, Plaintiff and his wife's bedroom closet, and the contents of dresser drawers, etc.

34.     Ash's video was not produced in discovery during prosecution of Plaintiff.

35.     Ash's video was withheld by Ash, Van Arsdall, and Baker County when requested by Plaintiff via FOIA.

36.     Also present at the search was BCPD Officer Shannon Regan and BCSO deputies Benson, Colton, and Van Arsdall.

37.     The search occurred in retaliation for First Amendment speech activities.

38.     The search was too broad, and went beyond allowed parameters.

**Regan Searches for Unrelated Evidence**

39.     Regan searched for unrelated evidentiary items pertaining to a closed cold case and reported her findings to Lohner during the search.

40.     Regan participated in the search by removing a binder from a bookshelf and looking through the binder, which contained copyrighted material clearly labeled with dates preceding the scope of the warrant.

41.     Regan found Plaintiff's login information and passwords for Plaintiff's personal and private accounts on the last pages of the binder, after looking through all the pages. Regan then placed the binder back on the shelf, and then pointed it out to Benson, so he could "find" it himself.

42.     Benson then also looked through the entire binder, and also encountered the login information and passwords on the final pages of the binder. Benson, while looking at Plaintiff's passwords and login information, said, "This will be handy."

43.     BCSO deputy Colton had not read the warrant.

44.     Ash and Baker County are withholding Plaintiff's Oregon concealed handgun license in violation of Plaintiff's Second Amendment rights.

45.     The affidavit in support of the search warrant was written on August 7, 2107.

46.     City Manager Warner was not asked about statements made by Plaintiff at Lime until August 10, 2017. Warner lied about statements made by Plaintiff at Lime.

47.     Baker County, Ash and Van Arsdall committed Freedom of Information Act ("FOIA") violations.

## CONTEXT AND BACKGROUND

### Plaintiff's Speech and Activity in 2017

48.     As a private citizen, and/or as a Baker City Councilor, Plaintiff was, prior to, and during the time of the wrongful actions alleged:

(a)  Publicly expressing skepticism about city and county prohibition of recreational marijuana sales, and questioning local prohibition in the face of local revenue scarcity and statewide legalization;

(b)  Meeting officially and in person with BCPD Chief Wyn Lohner, who was vehemently opposed to marijuana sales, in order to understand his position and elicit productive dialogue.

(c) Serving on the Baker City Public Art Commission;

## FIRST AMENDMENT RETALIATION

### "Graffiti" is Only a Serious Crime When Allegedly Committed by Plaintiff

49.     No other criminal case similar to Plaintiff's has been prosecuted in Baker County in a comparable manner.

50.     Plaintiff's activities were deemed as serious criminal acts because of his ideas, his speech, his religion, and his protected speech.

51.     District Attorney Shirtcliff discriminated against Plaintiff because of speech activities.

52.     Search warrants for alleged infractions identical or similar to Plaintiff's in Baker County and Baker City have never been applied for, or granted.

53.     Spray painting is a very common infraction in Baker City and in Baker County. Other cases alleging spray painting have not been equally investigated, prosecuted, or punished.

54. Other cases alleging trespassing have not been equally investigated, prosecuted, or punished. Other victimless cases of minor mischief and/or harmless trespassing have been treated by law enforcement as low priority and relatively unimportant.

55. Other victimless cases of minor mischief and/or harmless trespassing have resulted in citations being issued, and small fines, but such cases never lead to high profile searches and seizures, they are rarely newsworthy, and provoke little public notice or comment.

### Reasons for Retaliatory Search

56. The warrant was overly broad, and the search of Plaintiff's person, property, and vehicles on August 9, 2017 was unreasonable, and occurred in order to disrupt his life, thwart his effectiveness as a city councilor, and occurred in retaliation for:

(a) Oral complaints made by Plaintiff to Ash on August 2, 2017;

(b) An article, published on August 4, 2017, based on information provided by Plaintiff to the Baker City Herald;

(c) An editorial criticizing local law enforcement, written by Plaintiff.

(d) Feelings of disrespect due to a published article that said Plaintiff was "mocking law enforcement;"

(e) Plaintiff's public opposition to local prohibition of legal marijuana sales;

(f) Plaintiff's public appreciation for "graffiti" style urban street art;

(g) Plaintiff's public and private speech regarding the illegal dissolution of Baker City's Municipal Court;

(h) Plaintiff's interest in consolidating local law enforcement in light of budget limitations, efficiency, justice, and common sense.

### Plaintiff Discriminated Against for Religious Reasons

57.     Both DA Shirtcliff and Judge Gregory Baxter ("Baxter") are members of the Latter-day Saint ("Mormon") Church.

58.     Plaintiff was raised as a member of the Mormon church, and remained active in the Mormon church until his mid-twenties.   In his mid-twenties, Plaintiff left the Mormon Church for personal philosophical reasons.

59.     In 2008 the Mormon church played a major role, financially and otherwise, in the passing of Proposition 8 in California. In 2008, due to the passage of Proposition 8, in order to completely distance himself from ideas and politics Plaintiff considered unconstitutional, Plaintiff went to extraordinary effort to see that his name was permanently removed from the records of the Mormon church.

60.     Shirtcliff, Baxter,, and other Mormons in Baker City and Baker County knew, or likely knew, Plaintiff was an "ex-Mormon."

61.     Active Mormons sometimes hold former Mormons in disdain. Active Mormons sometimes call former Mormons "apostates." Mormons sometimes consider Mormons who have had their names removed from Mormon church records to be "sons of perdition," and therefore, "unredeemable."

62.     Mormons sometimes consider the tenets and rules of Mormonism to supersede civil laws.

## FOURTH AMENDMENT VIOLATIONS

### High Profile Search Went Beyond Allowed Parameters

63.     During the August 9, 2017 raid, Ash and other deputies searched through all Plaintiff's belongings, including computers, notebooks and loose papers that contained Plaintiff's

private journals, creative writings, essays, and thoughts. Several items outside the limited parameters of the search were examined and/or seized.

64. The warrant allowed search and analysis of only items related to the specific investigation, and was "limited to the date range of August 8, 2015 to August 8, 2017." Many searched and/or seized documents and media fell outside specified date limitations of the search warrant. Media and writings from before August 8, 2015 were examined and/or seized.

65. Notes written on August 9, 2017 were also examined and/or seized. Many searched and/or seized items were irrelevant to the investigation.

66. Any search was unnecessary, since Plaintiff had already openly admitted to painting his logo at Lime and asked for a citation.

67. No further alleged crime was mentioned in the warrant, or by any other agent of any court or any agency whatsoever.

## iPad Containing Twelve Years of Personal Data Seized

68. On August 9, 2017 officers seized an iPad used by Plaintiff to store sensitive medical information, private correspondence, financial records, visual and audio media, etc. Much of this private, personal data fell outside the stated date range allowed by the warrant. The iPad was seized by Sheriff Ash for approximately 104 days.

69 The iPad is an old model, acquired around 2005. The iPad had been used continually by Plaintiff since 2005, and therefore contained photos, videos, records, documents, etc., going back twelve years, falling well outside the date-specific parameters of the search warrant.

## Seized iPad In Use on Facebook While Confiscated

70.     While in the custody of Baker County, the seized iPad was used to log into Plaintiff's Facebook account. Plaintiff observed, by using an iPhone app, that the seized iPad was in use, and he observed activity occurring on is private Facebook page remotely, while he was not logged in.

## Social Media Accounts Lost

71.     Plaintiff was unable to log out of his own Facebook account. Plaintiff's Facebook account was deleted permanently as a result.

72.     Instagram is a subsidiary of Facebook.

73.     Plaintiff used Instagram to display and store original art, and to store, share, and display photos and videos of people, objects, nature, scenes, and various form of art and media created and displayed by other people.

74.     Plaintiff also used Instagram to document the events outlined in this Complaint as they unfolded.

75.     Plaintiff's Instagram account began to be controlled remotely, and was then deleted. Plaintiff lost thousands of irreplaceable photographs and video clips as a result.

76.     Defendants retaliated against Plaintiff for using Instagram to share his experience at Lime, and information about the retaliatory search conducted by Defendants.

## Plaintiff's iPhone Seized Unreasonably

77.     Plaintiff's iPhone remained active, and in use, while in BCSO possession.

78.     Seizing Plaintiff's iPhone was a retaliatory and unreasonable invasion of privacy. Seizure of Plaintiff iPhone, for 104 days, was punitive and unreasonable. This breach of Plaintiff's privacy was meant to intimidate and inconvenience him, and to harm his business prospects, social ties, and relationships.

79.     The 104-day seizure was unreasonable. It was meant to hinder business and political endeavors, and to chill Plaintiff's speech.

**Ecclesiastical Documents Searched and Seized**

80.     Ecclesiastical documents and correspondence were also examined and seized; Plaintiff is an ordained minister. Ecclesiastical documents are privileged and subject to special privacy protection.

**Copyrighted Material Beyond Warrant Parameters Examined During Search**

81.     Regan and Benson examined Plaintiff's passwords and login information. Referring to the passwords, Benson said, "This will be handy." Regan said, "It's definitely records—material which is covered in the warrant."

82.     Benson's comment indicates that the login information and passwords will be used.

83.     Regan's comment is erroneous; the contents of the binder fall outside the specified date limitations of the warrant.

84.     The warrant provided no permission to use login information and passwords to peruse Plaintiff's private online accounts, etc.

85.     Plaintiff's login information and passwords were used by Defendants to invade Plaintiff's privacy by logging into, examining, manipulating, and deleting, Plaintiff's Facebook and Instagram accounts.

86.     Information spanning many years, including financial institutions, personal, professional and academic email accounts, academic records, medical records, social media login information, etc., along with login information for Plaintiff's wife's private email account, was examined and/or seized by Defendants.

87. Ash used his tablet device to photograph Plaintiff's sensitive and private binder pages.

88. Media recorded on Ash's tablet device should have been provided to Plaintiff as part of discovery in the case against Plaintiff. But the media was conspicuously absent. Because it was missing from discovery, media recorded on Ash's tablet device during the August 9, 2017 search was requested multiple times. Baker County, Ash, and Van Arsdall withheld information requested in a timely manner via FOIA.

89. The material on Ash's tablet was never produced. Each request for this public record was either ignored, or rebuffed.

90. Days after the search, Plaintiff's Facebook account was logged into using the seized iPad, and Plaintiff was unable to log off from home. Plaintiff's wife also observed this remote activity.

**Expensive FOIA Results Demonstrate No Similar Searches Occurred**

91. In order to fulfill a public FOIA request for approximately five years' worth of records for warranted searches, Van Arsdall projected an estimated charge of $4,634.00 USD.

92. Defendants resisted disclosing public records. Such resistance was unreasonable, illegal, and harmful.

93. In response to a FOIA request covering five years, only three applications for "similar" Search Warrants were produced:

94. One produced warrant was for the search of a convicted felon charged with burglary. A second search warrant was for a green school bus parked mysteriously on a Baker City airport runway; terrorism was suspected. The third search in five years was the warrant for

Plaintiff, with no serious related charges justifying a search. Plaintiff was suspected of only minor infractions, and had no prior criminal history or record.

95.     The handful of other individuals cited for trespassing at Lime were cited and released.

96.     No comparable investigations, detentions or searches have been recorded in Baker County due to comparable infractions.

**Search and Seizure of Plaintiff's Property was Unique; Therefore Discriminatory**

97.     Baker County records demonstrate that the search of Plaintiff's person, his home, and his vehicles, represent discrimination and retaliation against him. Plaintiff's experience was anomalous, and without precedent.

98.     Defendants' retaliatory search of Plaintiff's person and property singled him out in order to silence Plaintiff's public opinions, chill his speech, infringe his second amendment rights, and diminish his activism.

**Baker County's Cellebrite Machine, Ash Keeps iPhone Anyway**

99.     Data on Plaintiff's iPhone, including files outside the date range of the warrant, were downloaded by Ash, using a Cellebrite device.

100.    At the Baker County Commissioners meeting held August 17, 2016, Ash stated, regarding the Baker County Sheriff's Department's Cellebrite device: "The department uses [the] machine to take evidence off of electronic equipment in search warrants and criminal investigations. Once the information is downloaded the phone is returned to its owner."

101.    Ash defended the substantial cost of the Cellebrite machine to the commission by emphasizing, as an advantage, that it prevents suspects' unnecessary separation from their

personal communication devices. Despite this statement, Ash retained Plaintiff's iPhone for approximately 104 days, until November 20, 2017.

102.    Even then, with the case resolved, Plaintiff was caused to exert undue effort to retrieve the iPhone and other seized items from Ash before leaving town for an extended Thanksgiving trip. An audio recording exists of resistance Plaintiff experienced from BCSO while attempting to retrieve seized items after Plaintiff's plea hearing was over and his items released.

103.    It is not reasonable to withhold an individual's sole communication device just so that individual can't use it. Ash's 104 day seizure of Plaintiff's iPhone caused harm to Plaintiff. It was retaliatory, was a deprivation of Plaintiff's civil rights, an invasion of privacy, and meant to chill Plaintiff's speech.

104.    But for Ash's unlawful reasons to retain it, the iPhone would have been returned to Plaintiff after the data was downloaded.

### Ash Seizes Notes Detailing Deputy's Misconduct

105.    During the search of Plaintiff's home, Ash can be observed, on video recorded by Regan's body camera, examining a yellow legal pad, on a red plastic clipboard, on the dining room table of Plaintiff's home. Ash can be seen reading the legal pad with interest, then stating, "We'll take this."

106.    The legal pad, which was seized for 104 days, contains Plaintiff's notes detailing his experience of the unfolding situation, including Plaintiff's recorded notes stating that he observed Maldonado searching the saddlebags of his 1995 Harley-Davidson Custom 1200cc Sportster motorcycle at Lime before contact with Plaintiff.

### "Running My Mouth is at My Peril"

107.    Plaintiff's seized notes reveal Plaintiff felt frightened, pressured, mistreated and manipulated by Maldonado and Van Arsdall at Lime. The heading on the legal pad, in Plaintiff's handwriting, reads, "Running my mouth is at my peril."

108.    Plaintiff believes that the seizure of these notes represents an attempt by Ash to conceal facts, and to deprive Plaintiff of the ability to defend himself, and that the seizure of his notes violated Plaintiff's right to due process and freedom from unreasonable search.

### Ash Seizes Micro SD Card Containing Plaintiff's Recorded Oral Complaint

109.    During the search of Plaintiff's home, Ash seized the Micro SD card storing Plaintiff's oral complaint, digitally recorded by Plaintiff, with Ash's knowledge, in Ash's office, on August 2, 2017.

110.    The Micro SD card was confiscated by Defendant Ash for approximately 104 days. Plaintiff believes that the seizure of this recording represents an attempt by Ash to conceal misconduct and deprive Plaintiff of the ability to defend himself.

### False and Libelous Accusation of Criminal Activity

111.    "Street art" is the most prevalent subject matter shared on Instagram. Like countless others, Plaintiff shared photos of "street art" on Instagram.

112.    Regan followed Plaintiff's Instagram feed. Regan and McQuisten discussed Plaintiff's Instagram account. McQuisten interacts socially with other Defendants.

113.    On August 18, 2017, McQuisten published an article about Plaintiff headlined, "Council Member's Social Media Activity Shows Graffiti Affinity." The first line of McQuisten's article reads, "A look at social media activity posted by embattled Baker council member Adam Nilsson shows an extensive history of spray painting graffiti, or tagging, in multiple states—including several trips to Lime."

114.    There is no evidence of Plaintiff "spray painting graffiti, or tagging, in multiple states." McQuisten's article also says Plaintiff was "mocking local law enforcement."

115.    McQuisten's statements are false. These harmful statements demonstrate a reckless disregard for the truth, and for the Plaintiff's reputation.

116.    Due to harm done to his reputation by Defendants, Plaintiff moved out of Baker County.

117.    McQuisten's article was intended to chill Plaintiff's speech.

**Article Targeted to Make False Charges Stick**

118.    McQuisten's article was published to retroactively make the retaliatory search seem reasonable to the public.

119.    The article willfully contributed to law enforcement feeling disrespected, and put Plaintiff in danger.

**SECOND AMENDMENT VIOLATIONS**

**Plaintiff's Second Amendment Rights Infringed, Not Protected**

120.    Plaintiff's Second Amendment rights have been infringed from August 1, 2017, until the present. Plaintiff held an Oregon concealed handgun license, unquestioned and uninterrupted, for approximately seven years prior to the wrongful actions alleged. Nothing occurred that justified the intrusive and unnecessary infringement of Plaintiff's Second Amendment protection. Plaintiff's Second Amendment rights have been infringed by Defendants' rather than protected.

**Plaintiff's Concealed Handgun License Mishandled**

121.    Plaintiff emphasizes the unjust circularity of Ash's and Baker County's argument and justification for removal and retention of Plaintiff's concealed handgun license. Plaintiff's

concealed handgun license should have never been discussed. Plaintiff's concealed handgun license should have never been removed.

122.    Plaintiff's concealed handgun license should have been returned as a result of a good faith plea agreement negotiated with Shirtcliff. Continued withholding of Plaintiff's concealed handgun license is a deliberate and ongoing Second Amendment violation of Plaintiff's rights by Defendants.

**Plaintiff's Plea Agreement with State of Oregon Dishonored**

123.    Shirtcliff's decision to prosecute Plaintiff for allegedly trespassing and painting at Lime was unique and retaliatory.

124.    No other examples of prosecution of similar allegations with comparable levels of intensity, persistence, and publicity, can be demonstrated to have been pursued by Shirtcliff, or in Baker County.

125.    Plaintiff insisted that any plea agreement with Shirtcliff include the restoration of his concealed handgun license. Plaintiff reiterated this explicitly, and repeatedly, to his attorney, and to his wife.

126.    When his attorney presented Plaintiff with a plea agreement lacking specific language regarding restoration of his concealed handgun license, Plaintiff questioned the contents and validity of the agreement. His attorney assured Plaintiff that the agreement was intact. Plaintiff was persuaded to sign the plea agreement. Plaintiff's wife was present at the meeting and observed this conversation.

127.    Plaintiff did not believe at any time that he was guilty of any crime. Plaintiff signed the plea agreement at his wife's insistence.

**Bait and Switch Plea Deal**

128. After the plea hearing, Sheriff Ash withheld Plaintiff's license, and stated publicly that, due to Plaintiff's "criminal conviction," Plaintiff was ineligible for a concealed handgun license. Ash discriminated against Plaintiff, withholding Plaintiff's concealed license in retaliation for Plaintiff's speech.

### Plaintiff Fires Defense Attorney Over Failure of Plea Agreement

129. Plaintiff and his wife refused, in writing, to pay any outstanding charges to their attorney, and demanded in writing, the return of Plaintiff's original retainer. Plaintiff also requested in writing that his attorney withdraw as counsel. In explanation for failing to deliver the plea agreement promised, Plaintiff's attorney said, "You don't know these guys."

130. Plaintiff and his wife understood their attorney to mean that, in Baker County, things are done a certain way, and justice is not always the goal.

### Plaintiff Serves Oregon Tort Claims Act Notices

131. On January 23, 2018, Plaintiff served notarized Oregon Tort Claims Act Notices.

132. The conduct described in this Claim was objectively unreasonable was undertaken with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights and the harm that would result to Plaintiff.

133. As a direct and proximate result of Defendants' actions described herein, Plaintiff suffered and continues to suffer harm and damage, including without limitation denial of individual and constitutionally guaranteed liberties, physical and psychological injuries, mental distress, embarrassment and humiliation, termination of contracts, the interruption of his work and livelihood, loss of consortium with his wife, blemished standing and harm to his reputation, invaded privacy and diminished peace of mind, lost feelings of security in his home, papers and

possessions, lost correspondence and contacts, lost photos, footage and artwork he would have otherwise retained, and other damages in an amount to be determined.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### First Amendment Retaliation (42 U.S.C. § 1983)

### (Against All Defendants)

134.    Plaintiff re-alleges and incorporates paragraphs 1 through 133 as though fully set forth below.

135.    42 U.S.C. section 1983, originally part of the Civil Rights Act of 1871, 17 Stat. 13, creates a private right of action to vindicate violations of "rights, privileges, or immunities secured by the Constitutions and laws of the United States. Under the terms of the statute: "Every person who, under color of [law]***causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (42 U.S.C. § 1983)

136.    42 U.S.C. § 1983 specifically provides civil remedies for First Amendment violations, including monetary damages, attorney fees, and certain punitive damages.

137.    At all times relevant to the allegations in this complaint, all officers, deputies and officials mentioned in this complaint were on-duty and acting under color of law.

138.    With respect to Plaintiff's claims under 42 U.S.C. § 1983, all persons named are "persons" for purposes of 42 U.S.C. § 1983. Defendants, acting under color of state law, have

deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the First Amendment Rights to Free Speech, by acting in deliberate retaliation for Plaintiff's exercise of free speech and expression, and by otherwise discriminating and retaliating against him for exercising his basic and fundamental rights to engage in free expression including the rights to criticize a public official and make political statements.

139.    Plaintiff's oral complaint to Ash and BCSO on August 2, 2017 about Maldonado's August 1, 2017 unreasonable search, detention and arrest of Plaintiff and Schroder is speech protected by the First Amendment to the Federal Constitution.

140.    Plaintiff's oral complaint to Ash and BCSO on August 2, 2017, is a matter of public concern.

141.    Plaintiff's email to Baker City Council et al., on August 7, 2017, is speech activity protected by the First Amendment to the Federal Constitution.

142.    Plaintiff's sharing of an email, written by Plaintiff, with the press, is speech activity protected by the First Amendment to the Federal Constitution.

143.    Plaintiff's sharing of information, including legally recorded audio of Plaintiff's oral complaint to Ash, with the Baker City Herald, is speech activity protected by the First Amendment of the Federal Constitution.

144.    Plaintiff's informing the public that Maldonado stopped, or caused to be stopped, a video from being recorded of Maldonado's behavior at Lime is protected free speech.

145.    All speech and speech activities undertaken by Plaintiff, public or private, were protected by the free speech and free press clauses of the First Amendment to the United States

Constitution, as incorporated through the Fourteenth Amendment to the United States Constitution.

146.     On August 9, 2017, Defendants, acting under color of law, took action against Plaintiff by searching and seizing Plaintiff's property in retaliation for Plaintiff's First Amendment-protected speech and conduct.

147.     In stopping, or allowing to be stopped, Plaintiff's filming and journalistic activity, Defendants violated Plaintiff's clearly established First Amendment and Fourteenth Amendment rights under the United States Constitution, of which Defendants knew, or of which reasonable law enforcement officers should have known.

148.     In seizing Plaintiff's iPhone, in order to stop Plaintiff from posting speech and speech activities on social media, Defendants violated Plaintiff's clearly established First Amendment and Fourteenth Amendment rights under the United States Constitution, which Defendants knew, or of which reasonable law enforcement officers should have known.

149.     In response to this constitutionally protected activity, Defendants engaged in the specific retaliatory conduct alleged herein.

150.     Defendants' acts were motivated by Plaintiff's protected activity.

151.     Defendants' acts would likely have deterred a person of ordinary firmness from engaging in that protected activity, and did, in fact, have a significant chilling effect on Plaintiff's speech.

152.     Chilling Plaintiff's protected speech was a substantially motivating factor for Defendants.

153.     As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

154.    Plaintiff also requests declaratory and injunctive relief, including a declaration stating that his rights were violated, and requiring Defendants to impose new policies and training requirements to be consistent with the First and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to record live audiovisual footage of police activities in public, the right to complain both publicly and privately about law enforcement misconduct, and the rights to speak freely both publicly and privately without fear of law enforcement retaliation.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment Violations (42 U.S.C. § 1983)

### Count One: Against Sheriff Travis Ash

155.    Plaintiff re-alleges and incorporates paragraphs 1 through 154 as though fully set forth below.

156.    Ash, acting under color of state law, deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the Fourth Amendment protections against unreasonable searches and seizures by conducting a search and seizure in retaliation for Plaintiff's exercise of free speech and expression, and by otherwise unreasonably exceeding the scope of a warrant.

157.    Ash's seizure of Plaintiff's personal work progress notes, written on a yellow legal pad and attached to a red plastic clipboard was retaliatory and unreasonable.

158.    The notes, in Plaintiff's handwriting, with the headline, "Running My Mouth is At My Peril," outlined Plaintiff's experience and observation of deputy misconduct at Lime, and detailed Plaintiff's fearful mindset.

159.    The search warrant was limited to Plaintiff's documents from August, 8, 2015 to August 8, 2017. The legal pad seized by Ash contained notes written on the day of the search—August 9, 2017, which is beyond the parameters of the warrant.

160.    Plaintiff's testimony of unfolding events, with thoughts and plans regarding how to proceed with defending himself against retaliatory conduct and criminal charges, represents an attempt by Ash to conceal facts and hinder Plaintiff's ability to defend himself, and therefore violates Plaintiff's right to freedom from unreasonable search.

161.    As a direct and proximate result of Ash's unconstitutional violations of Plaintiff's Fourth Amendment rights, Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

162.    Plaintiff requests declaratory and injunctive relief, including a declaration stating that his rights were violated, and requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

**Fourth Amendment Violation (42 U.S.C. § 1983)**

**Count Two: Against Travis Ash**

163.    Plaintiff re-alleges and incorporates paragraphs 1 through 162 as though fully set forth below.

164.    Ash's seizure of Plaintiff's Micro SD card containing the recording of Plaintiff's complaint to Ash outlining deputy misconduct has nothing to do with investigating a crime and everything to do with depriving Plaintiff of the ability to explain himself and expose misconduct, and therefore violates Plaintiff's right to freedom from unreasonable search.

165.    Plaintiff was harmed as a result of Ash's conduct.

166.    Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

167.    As a direct and proximate result of Ash's unconstitutional violations of Plaintiff's Fourth Amendment rights, Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

168.    Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

169.    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

170.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

**Fourth Amendment Violation (42 U.S.C. § 1983)**

**Count Three: Against Travis Ash**

171.    Plaintiff re-alleges and incorporates paragraphs 1 through 170 as though fully set forth below.

172.    Regan's body camera footage recorded August 9, 2017 shows Ash recording video of multiple locations, on Plaintiff's property, and in Plaintiff's home, using an electronic tablet device.

173.    Video and photographs recorded by Ash, and stored on the tablet device he used to film and photograph Plaintiff's home and property during the search were absent from

discovery provided by Ash and Shirtcliff in association with criminal proceedings against Plaintiff.

174.     The material should have been provided as part of discovery.

175.      At Plaintiff's request, on February 2, 2018, Plaintiff filed a FOIA request with Baker County and BCSO, for "any and all records that pertain to the search of [Plaintiff's] person, vehicle/motorcycle, and house on August 9th, 2017," specifically requesting "photographs, videos, and all communications…related to…the incident."

176.     The video and photos recorded during the search by Ash were not produced.

177.     On October 21, 2019, Plaintiff filed another FOIA request specifically seeking "photos and video taken during the August 9th, 2017 search," reiterating in the request that "BCPD body camera video shows Sheriff Ash taking photos and/or video with his iPad during the search."

178.     The requested media was still not produced.

179.     Ash and Baker County are required by law to make public records requested in a timely manner available to the public.

180.     Plaintiff alleges that video recorded by Ash during the August 9, 2017 search of Plaintiff's home is public record; unless Ash recorded the video for personal use, Baker County must produce the material as per the Freedom of Information Act.

181.     Therefore, Plaintiff alleges that Ash recorded video of Plaintiff's home, for personal and private use, under color of law, while in the process of searching Plaintiff's home, under color of law, on August 9, 2017.

182.     This act deprived Plaintiff of his right to freedom from unreasonable search and seizure.

183.    Taking private video of a person's home without permission is harmful.

184.    Plaintiff was harmed as a result of Ash's conduct.

185.    Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

186.    As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

187.    Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

188.    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search and seizure.

189.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Fourth Amendment Violation (42 U.S.C. § 1983)

### Count Four: Against Travis Ash

190.    Plaintiff re-alleges and incorporates paragraphs 1 through 189 as though fully set forth below.

191.    Defendant Ash's 104-day seizure of Plaintiff's iPhone, used by Plaintiff for all Plaintiff's communication, for all Plaintiff's business, for all Plaintiff's civic duties, for all Plaintiff's storage of contact information, emergency, family, business, and otherwise, for all

Plaintiff's data storage and manipulation, all daily organization, appointments, workflow, work progress, project development, notes, ideas schedules—in short, holding Plaintiff's entire life and existence cohesively together, facilitating commerce and consortium, and allowing Plaintiff to function normally in society—was retaliatory, and meant to harm Plaintiff's public and private life, his work, his family, his prospects, and his peace of mind.

192.     Ash's extended seizure of Plaintiff's iPhone contradicts Ash's statements to the Baker County Commission regarding the necessity of returning a suspect's phone as soon as possible for the purposes of justice and reasonableness.

193.     As a result of Ash's unreasonable seizure of Plaintiff's iPhone, all the data, including many years' worth of work and writings, and all of Plaintiff's contacts and contacts' information, along with various other data, including evidence pertinent to this complaint, were deleted.

194.     Confiscating Plaintiff's iPhone for 104 days was unreasonable and harmful. The seizure of Plaintiff's iPhone was retaliatory.

195.     Defendant Ash's conduct was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and to the resulting harm to Plaintiff.

196.     As a result of Defendant Ash's acts or omissions, Plaintiff suffered damages, including termination of contracts, interference with his ability to feel secure in his home, papers and possessions, and persisting damage to his relationships, and to his health and livelihood.

197.     Plaintiff was harmed as a result of Ash's conduct.

198.    Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

199.    As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

200.    Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

201.    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search and seizure.

202.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Fourth Amendment Violation (42 U.S.C. § 1983)

### Count Five: Against Travis Ash

203.    Plaintiff re-alleges and incorporates paragraphs 1 through 202 as though fully set forth below.

204.    On August 9, 2017 Ash seized an iPad used by both Plaintiff and Plaintiff's wife to store sensitive medical information, private correspondence, financial records, visual and audio media, etc. Much of this private, personal data fell outside the stated date range allowed by the warrant.

205.    The iPad was seized by Sheriff Ash for approximately 104 days.

206.     The iPad is an old model, acquired in or around 2005. The iPad contains photos, videos, records, documents, etc., going back twelve years, falling well outside the limited parameters of the search warrant.

207.     Plaintiff was harmed as a result of Ash's conduct.

208.     Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

209.     As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

210.     Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

211.     Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

212.     Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.


## Fourth Amendment Violation (42 U.S.C. § 1983)

## Count Six: Against Travis Ash

213.     Plaintiff re-alleges and incorporates paragraphs 1 through 212 as though fully set forth below.

214.    While in the custody of Ash, the seized iPad was used to log into Plaintiff's Facebook account. Ash used Plaintiff's privileged login information and passwords, seized illegally, to do so.

215.    Plaintiff's Facebook account was permanently deleted as a result of Ash penetrating and invading his devices and accounts, violating Plaintiff's privacy, which is unreasonable

216.    Plaintiff permanently lost thousands of photos and videos. Retaliating against an individual in such a way that their social media network is entirely dismantled and many years worth of photos and video are lost is harmful, and not reasonable.

217.    Plaintiff was harmed as a result of Ash's conduct.

218.    Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

219.    As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

220.    Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

221    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

222.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

**Fourth Amendment Violation (42 U.S.C. § 1983)**

**Count Seven: Against Travis Ash**

223.	Plaintiff re-alleges and incorporates paragraphs 1 through 222 as though fully set forth below.

224.	As a result of Ash's invasion of Plaintiff's privacy, and searches and seizures beyond the scope of the warrant, Plaintiff's Instagram account became inaccessible to Plaintiff, and after a time was permanently deleted while not under Plaintiff's control.

225.	Plaintiff was harmed as a result of Ash's conduct.

226.	Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

227.	As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

228.	Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

229.	Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

230.	Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

**Fourth Amendment Violation (42 U.S.C. § 1983)**

**Count Eight: Against Travis Ash**

231.   Plaintiff re-alleges and incorporates paragraphs 1 through 230 as though fully set forth below.

232.   Plaintiff is an ordained minister. During the search of Plaintiff's property, ecclesiastical records, documents, and correspondence were examined and seized; both Plaintiff's seized iPad, and Plaintiff's seized iPhone, contained private, privileged, ecclesiastical material.

233.   Computers and notebooks in Plaintiff's home containing privileged ecclesiastical records, documents, and correspondence, were also searched. Searching and seizing privileged ecclesiastical material went beyond the intended scope and specified parameters of the search, and was unreasonable.

234.   Plaintiff was harmed as a result of Ash's conduct.

235.   Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

236.   As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

237.   Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

238.   Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

239.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Fourth Amendment Violation (42 U.S.C. § 1983)

## Count Nine: Against Travis Ash

240.    Plaintiff re-alleges and incorporates paragraphs 1 through 239 as though fully set forth below.

241**.**    On August 9, 2017 Ash seized an iPad used by both Plaintiff and his wife, to store sensitive and privileged medical information and records. This private, personal data fell outside the parameters allowed by the warrant. The iPad was seized by Sheriff Ash for approximately 104 days.

242.    Plaintiff's seized iPhone also contained sensitive and privileged medical information and records. Other computers and devices searched during the raid of Plaintiff's home contained sensitive and privileged medical financial, and private personal information that fell outside the allowed parameters of the warrant.

243.    Plaintiff believes that search and seizure of medical and financial records was discriminatory, unreasonable, and harmful to Plaintiff.

244.    Defendant Ash's conduct was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and to the resulting harm to Plaintiff.

245.    Defendant Ash's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

246.     As a result of Defendant Ash's acts or omissions, Plaintiff suffered damages, including termination of contracts, interference with his ability to feel secure in his home, papers and possessions, and persisting damage to his relationships and to his health and livelihood.

247.     Plaintiff was harmed as a result of Ash's conduct.

248.     Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

249.     As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

250.     Based on Ash's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

251.     Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

252.     Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Fourth Amendment Violation (42 U.S.C. § 1983)

### Count Ten: Against Officer Shannon Regan and Deputy Will Benson

253.     Plaintiff re-alleges and incorporates paragraphs 1 through 252 as though fully set forth below.

254     With respect to Plaintiff's claims under 42 U.S.C. § 1983, Officer Shannon Regan and Deputy Will Benson are both "persons" for purposes of 42 U.S.C. § 1983.

255.     Officer Regan and Deputy Benson thumbed through Plaintiff's "Americanto" binder, leafing past numerous 2014 dates (beyond the allowed parameters of the warrant) to find Plaintiff's passwords and account information.

256.     Neither Regan nor Benson was authorized to search material clearly marked with dates in 2014, and therefore beyond the warrant's allowed parameters.

257.     Searching through a binder full of 2014 documents to find all of Plaintiff's passwords and login information on the last few pages, was unreasonable, went beyond the scope of the warrant, and was harmful.

258.     Both Regan and Benson were on duty, and acted, at all relevant times, under color of law, with malice and willful disregard for Plaintiff's rights and with knowledge of harm their actions and omissions would cause to Plaintiff.

259.     Their behavior was objectively unreasonable. Plaintiff was harmed as a result of Benson's conduct, and also harmed as a result of Regan's conduct; they both acted intentionally, and with indifference to Plaintiff's rights. Therefore Plaintiff is entitled to an award of damages, injunctive relief, and declaratory relief.

260.     Neither Regan nor Benson are entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

261.     As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

262.     Based on Benson's conduct, and based on Regan's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

263.    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring Defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

264.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Fourth Amendment Violation (42 U.S.C. § 1983)

## Count Eleven: Against Deputy Eric Colton

265.    Plaintiff re-alleges and incorporates paragraphs 1 through 264 as though fully set forth below.

266.    With respect to Plaintiff's claims under 42 U.S.C. § 1983, Deputy Eric Colton is a "person" for purposes of 42 U.S.C. § 1983.

267.    During the search of Plaintiff's home and property, Deputy Colton can be seen and heard on video recorded by Regan's body camera saying, "I didn't read the warrant; I don't know what's on it."

268.    A deputy who has not read the warrant, and who admittedly does not know what is on it, cannot possibly be aware of the parameters of the search. Nevertheless, Colton can be seen on video, searching Plaintiff's home.

269.    Deputy's Colton's conduct was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and to the resulting harm to Plaintiff.

270.    Colton's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

271.     As a result of Defendant Colton's acts or omissions, Plaintiff suffered damages, including interference with his ability to feel secure in his home, papers and possessions, and persisting damage to his happiness and to his health and livelihood.

272.     Plaintiff was harmed as a result of Colton's conduct.

273.     Deputy Colton is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

274.     As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

275.     Based on Colton's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

276.     Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

277.     Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Fourth Amendment Violation (42 U.S.C. § 1983)

## Count Twelve: Against Officer Shannon Regan

278.     Plaintiff re-alleges and incorporates paragraphs 1 through 277 as though fully set forth below.

279.     With respect to Plaintiff's claims under 42 U.S.C. § 1983, Officer Shannon Regan is a "person" for purposes of 42 U.S.C. § 1983.

280.     Regan's body camera footage shows her using lies, manipulation and subterfuge to gain access to Plaintiff's property to search for unrelated evidence pertaining to a BCPD closed case.

281.     The issued warrant forbade searching primarily for evidence of crimes beyond the investigation for which the warrant was issued.

282.     Regan's search for extraneous items was unreasonable, and harmful.

283.     Regan was, at all relevant times, on duty and acting under color of law.

284.     Regan was, at all relevant times, searching Plaintiff's home and property for evidentiary items pertaining to a cold case unrelated to the investigation for which the warrant was issued.

285.     At all relevant times, Regan acted under color of law.

286.     Regan was, at all relevant times, an on-duty BCPD police officer.

287.     Regan acted with malice, and with willful disregard for the rights of Plaintiff.

288.     Regan acted with deliberate indifference that her acts and omissions would cause Plaintiff harm.

289.     Regan's acts and omissions harmed Plaintiff.

290.     Officer Regan is not entitled to qualified immunity, because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

291     As a direct and proximate result of Regan's unconstitutional breach of duty, in the form of unreasonable search, violations of Plaintiff's Fourth Amendment rights occurred. Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

292.    Based Regan's conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

293.    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the First, Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

294.    Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.


## THIRD CLAIM FOR RELIEF

### Supervisory Liability (42 U.S.C. § 1983)

### Count One: Against Travis Ash and Wyn Lohner

295.    Plaintiff re-alleges and incorporates paragraphs 1 through 294 as though fully set forth below.

296.    Both Officer Regan and Deputy Benson thumbed through Plaintiff's "Americanto" binder, leafing past numerous 2014 dates (beyond the allowed parameters of the warrant) to find all Plaintiff's passwords and account information.

297.    Neither Regan nor Benson was authorized to search material clearly marked with dates in 2014, and therefore beyond the warrant's allowed parameters.

298.    Searching through a binder full of 2014 documents to find all of Plaintiff's passwords and login information on the last few pages, was unreasonable, went beyond the scope of the warrant, and was harmful.

299.    Both Regan and Benson were on duty, and acting under color of law.

300.    Acts and omissions by Regan and Benson were objectively unreasonable and harmed Plaintiff.

301.    Ash was responsible for the training and supervision of Benson, and for the supervision of all personnel present during the search.

302.    Lohner was responsible for the training and supervision of Regan, who was present at the search, and who searched beyond the warrant's allowed parameters while under his supervision.

303.    Ash, Lohner, Benson and Regan acted with malice, and with willful disregard for Plaintiff's rights, and with knowledge of harm their acts and omissions would cause Plaintiff.

304.    Both Ash and Lohner's behavior was objectively unreasonable. With malice, and deliberate indifference to Plaintiff's rights, Both Ash and Lohner willfully engaged in negligent conduct harmful to Plaintiff

305.    Plaintiff was harmed as a result of Ash's conduct and harmed as a result of Lohner's conduct.

306.    Neither Ash nor Lohner are entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

307.    As a result of this conduct, Plaintiff suffered the damages described in Paragraph 133 of this Complaint.

308.    Based on Ash's negligent conduct, and based on Lohner's negligent conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

309.    Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and

training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

310. Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## Supervisory Liability (42 U.S.C. § 1983)

## Count Two: Against Travis Ash

311. Plaintiff re-alleges and incorporates paragraphs 1 through 310 as though fully set forth below.

312. On Regan's body camera footage, Deputy Colton, while searching, states that he has not read the warrant, and that he does not know what is on it.

313. At all relevant times, Colton was on duty and acting under color of law.

314. A deputy unfamiliar with the warrant does not know the limitations of the warrant.

315. Ash was responsible for the training and supervision of all personnel present at the search.

316. Searching without knowing the parameters of the search is unreasonable, and harmful to Plaintiff.

317. Ash was responsible for the training and supervision of Colton, who was present at the search, and who searched Plaintiff's home and property although he had not read the warrant, and did not know what was on it.

318. While under Ash's supervision, Colton acted with malice, and with willful disregard for Plaintiff's rights, and with knowledge of harm his acts and omissions would cause Plaintiff.

319. At all relevant times, Ash and Colton were on duty, and acted under color of law.

320. By allowing Colton to search Plaintiff's property without having read the warrant, Ash acted with deliberate indifference to the rights of Plaintiff, and with willful disregard to harm his acts an omissions would cause Plaintiff.

321. Plaintiff was harmed as a result of Colton's conduct, by acts and omissions which occurred under Ash's supervision.

322. Plaintiff was harmed as a result of Ash's willfully negligent conduct.

323. Neither Ash nor Colton are entitled to qualified immunity, because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

324. As a direct and proximate result of Ash's unconstitutional breach of duty, in the form of negligent supervision violations of Plaintiff's Fourth Amendment rights occurred. Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

325. Based on Ash's negligent conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

326. Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

327. Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

**Supervisory Liability (42 U.S.C. § 1983)**

**Count Three: Against Travis Ash and Wyn Lohner**

328.    Plaintiff re-alleges and incorporates paragraphs 1 through 327 as though fully set forth below.

329.    Regan's body camera footage shows her using lies, manipulation and subterfuge to gain access to Plaintiff's property to search for unrelated evidence pertaining to a BCPD closed case.

330.    Ash was, at all relevant times, responsible for all personnel, and all law enforcement activity, during the search of Plaintiff's home and property.

331.    The issued warrant forbade searching primarily for evidence of crimes beyond the investigation for which the warrant was issued.

332.    Regan's search for extraneous items was unreasonable, and harmful.

333.    Regan was, at all relevant times, on duty and acting under color of law.

334.    Regan was, at all relevant times, searching Plaintiff's home and property for evidentiary items pertaining to a cold case unrelated to the investigation for which the warrant was issued.

335.    At all relevant times, Regan acted under color of law.

336.    Regan was, at all relevant times, an on-duty BCPD police officer.

337.    Regan acted with malice, and with willful disregard for the rights of Plaintiff.

338.    Regan acted with deliberate indifference that her acts and omissions would cause Plaintiff harm.

339.    Regan's willful acts occurred under Ash's supervision.

340.    At all relevant times Ash was responsible for all personnel searching Plaintiff's home and property. At all relevant times Ash was on duty, and acting under color of law.

341.    Ash breached his sworn duty by allowing Regan to search for evidentiary items unrelated to the investigation, and beyond the scope of the warrant. Ash's supervisory negligence occurred willfully, with malice, and with disregard for Plaintiff's rights, knowing his acts and omissions would cause Plaintiff harm.

342.    Lohner was, at all relevant times responsible for the training and supervision of BCPD officers.

343.    At all relevant times, Lohner acted under color of law, and was responsible for the training and conduct of all BCPD officers, and was liable for acts and omissions committed by all on-duty BCPD officers.

344.    Lohner acted with malice, and with willful disregard for harm Regan's acts and omission would cause Plaintiff.

345.    Regan's acts and omissions harmed Plaintiff.

346.    Lohner was, at all relevant times, accountable for Regan's presence at the search and liable for her conduct during the search.

347.    Lohner was, at all relevant times, responsible for Regan's training and supervision, and is therefore liable for her willful and deliberate unconstitutional misconduct, and liable for Regan searching primarily, for evidentiary items, beyond the scope of the warrant, pertaining to an unrelated cold case.

348.    Ash and Lohner are liable for supervisory negligence because Regan was, at all relevant times, under their supervision.

349.    Through Regan, Defendants Ash and Lohner, acting under color of law, with malice and with willful disregard, caused harm to Plaintiff, by examining and/or allowed to be

examined, devices, items, media, correspondence records and documents containing data created beyond the date range allowed by the warrant, and falling beyond the scope of the investigation.

350.    Defendants Ash and Lohner, acting under color of law, breached their supervisory duties by failing to ensure that all personnel participating in executing the search warrant followed policies and procedures, and honored the parameters and legal limitations of the warrant.

351.    Defendant Lohner, acting under color of law, failed to ensure that all BCPD participating in executing the search warrant understood and honored the parameters and legal limitations of the search.

352.    Defendant Ash's conduct was objectively unreasonable and was undertaken intentionally with willful disregard and deliberate indifference to Plaintiff's constitutional rights and to resulting harm to Plaintiff.

353.    Defendant Lohner's conduct was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and deliberate disregard to the resulting harm to Plaintiff.

354.    Defendant Ash's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

355.    Defendant Lohner's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

356.    Plaintiff was harmed as a result of Ash's and Lohner's negligent supervision.

357.    Neither Ash nor Lohner are entitled to qualified immunity, because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

358.     As a direct and proximate result of Ash's and Lohner's unconstitutional breach of duty, in the form of negligent supervision, violations of Plaintiff's Fourth Amendment rights occurred. Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

359.     Based on Ash's and Lohner's negligent conduct, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

360.     Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the First, Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

361.     Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

**Deprivation of Procedural Due Process Under the Federal Constitution (42 U.S.C. § 1983) Against Defendant Ash**

362.     Plaintiff re-alleges and incorporates paragraphs 1-361 as though fully set forth below.

363.     Defendant Ash, acting under color of state law, has deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the Fourteenth Amendment protections against the taking of life, liberty and property without due process of law, including but not limited to a retaliatory search of Plaintiff's home and seizure of sensitive property without providing any specific explanation or evidence or citing a legal violation for which the

actions were justifiable and not retaliatory, and not providing Plaintiff with any adequate opportunity to be heard.

364.    On August 1, 2017, Plaintiff told Maldonado that city manager Warner could verify why Plaintiff was at Lime, and that Plaintiff had interacted in a friendly manner with two county employees, days earlier, without incident, or any mention of trespassing.

365.    Rather than look into Plaintiff's story, Ash conducted a retaliatory search of Plaintiff's home and seized sensitive property.

366.    Deputy Kirby did not interview Warner, or county employees Perkins and West, regarding Plaintiff's claims, until the day after the search, on August 10, 2017.

367.    The affidavit in support of application for the warrant to search Plaintiff's property was written and filed on August 7, 2017, three days before checking Plaintiff's claims, on the same day Plaintiff sent a mass email criticizing BCSO.

368.    Van Arsdall, who Plaintiff reported misconduct against on August 2, 2017, executed the search warrant on Plaintiff's property alongside Ash, even though Ash had promised Plaintiff, on audio recording, an investigation into Van Arsdall's alleged misconduct.

369.    No investigation occurred. Ash acted in anger and deprived Plaintiff of his right to Due Process.

370.    Defendant Ash's conduct was objectively unreasonable and was undertaken intentionally with willful disregard and deliberate indifference to Plaintiff's constitutional rights and to resulting harm to Plaintiff.

371.    Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to due process under the law, the right to freedom from First Amendment retaliation,

the right to freedom from unreasonable search, and freedom from the infringement of the right to keep and bear arms.

372.     As a direct and proximate result of Ash's unconstitutional violations of Plaintiff's Fourteenth Amendment rights, Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

373.     Plaintiff further requests declaratory and injunctive relief necessary to end said violations, and requiring Defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the rights to equal protection and due process under the law.


**FIFTH CLAIM FOR RELIEF**

**Deprivation of Procedural Due Process Under the Federal Constitution (42 U.S.C. § 1983)**

**Against Defendant Maldonado**

374.     Plaintiff re-alleges and incorporates paragraphs 1-373 as though fully set forth below.

375.     Defendant Maldonado, acting under color of state law, has deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the Fourteenth Amendment protections against the taking of life, liberty and property without due process of law, including but not limited to causing, by his acts and omissions, the series of transactions that led to the deprivation of Plaintiff's rights without due process of law, and by not providing Plaintiff with any adequate opportunity to be heard.

376.     Maldonado's misconduct at Lime, and subsequent false report deprived Plaintiff of due process and set in motion a series of transactions that led to all further violations. By filing a false report rather than admitting wrongdoing, Maldonado's actions and omissions initiated a series of transactions leading to the deprivation of Plaintiff's rights on August 9th, 2017 when Plaintiff's residence and property were unreasonably searched.

377.     By establishing and maintaining a false position, with willful indifference to harm caused to Plaintiff, Maldonado's acts and omissions on August 1st, 2017 extended up to and beyond the date of the search, because all subsequent harm caused to Plaintiff was anchored to Maldonado's conduct at Lime. Maldonado was liable for his misconduct at Lime, and by falsifying his report, and allowing Plaintiff to be harmed rather than taking responsibility for his actions, he further harmed Plaintiff, and therefore extended his harmful conduct because the harm continued and increased.

378.     Defendant Maldonado's conduct was objectively unreasonable and was undertaken intentionally with willful disregard and deliberate indifference to Plaintiff's constitutional rights and to resulting harm to Plaintiff.

379.     Maldonado is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to due process under the law, the right to freedom from First Amendment retaliation, the right to freedom from unreasonable search, and freedom from the infringement of the right to keep and bear arms.

380.     As a direct and proximate result of Maldonado's unconstitutional violations of Plaintiff's Fourteenth Amendment rights, Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

381. Plaintiff further requests declaratory and injunctive relief necessary to end said violations and requiring Defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the rights to equal protection and due process under the law.

## SIXTH CLAIM FOR RELIEF

### Infringement of Second Amendment Rights

### Against Defendant Ash

382. Plaintiff re-alleges and incorporates paragraphs 1 through 381, as though fully set forth below.

383. The right to bear arms shall not be infringed.

384. Acting under color of law, Defendant Ash discriminated against Plaintiff and deprived Plaintiff of his Second Amendment rights.

385. Maldonado illegally removed Plaintiff's firearm and Oregon concealed handgun license at Lime on August 1, 2017.

386. Ash's retention of Plaintiff's concealed handgun license constitutes discriminatory and retaliatory behavior.

387. Ash's conduct regarding Plaintiff's concealed handgun license was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights and to the resulting harm to Plaintiff.

388. Ash's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

389.     Plaintiff was harmed as a result of Ash's conduct, and is entitled to an award of damages, injunctive relief, and declaratory relief.

390.     Sheriff Ash is not entitled to qualified immunity because the rights of Plaintiff that were violated were clearly established at the time of the conduct, including but not limited, to the right to freedom from unreasonable search.

391.     As a direct and proximate result of Ash's unconstitutional violations of Plaintiff's Second Amendment rights, Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

392.     Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Second, Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search and the right to bear arms.

## SEVENTH CLAIM FOR RELIEF

### County Liability: Negligent Supervision (42 U.S.C. § 1983)

### Against Defendants Baker County and Ash

393.     Plaintiff re-alleges and incorporates paragraphs 1 through 392 as though fully set forth below.

394.     Baker County and Ash have deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by failing to properly train and supervise other Defendants and county employees with respect to the constitutional and other rights of Plaintiff and members of the public, including but not limited to the rights of free speech, due process, the right to be free from unlawful search and

seizure, and the right to be free from unlawful retaliatory conduct in response to free speech activity.

395.    Baker County and Ash failed to supervise and train other Defendants and county deputies to prevent its deputies from engaging in retaliatory conduct in response to Plaintiff's exercise of free speech.

396.    The County and Ash knew, or should have known, about improper conduct by county employees presenting a risk of injury to Plaintiff.

397.    Baker County and Ash's failure to properly train and supervise deprived Plaintiff of his rights under the First, Second, and Fourteenth Amendments to the United States Constitution, which require due process, protect the right to keep and bear arms, and prohibit retaliation for the exercise of free speech.

398.    Baker County and Ash's failure to property train and supervise deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution, which prohibits unreasonable search and seizure.

399.    Baker County and Ash's failure to properly train and supervise resulted in the violation of Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution, by depriving Plaintiff of due process under the law.

400.    Defendant Baker County and Ash are liable for the deprivation of Plaintiff's rights, as set forth above, because the resulting defamation and deprivation was pursuant to a county custom, policy or practice of the County and/or its (1) agents retaliating against citizens who criticize Baker County law enforcement, or (2) permitting the Sheriff to set law enforcement policy without supervision.

401.     At all relevant times, Defendant Ash, acting under color of state law, had final policymaking authority for Baker County Sheriff's Department and engaged in the acts alleged herein while acting as a final policymaker for Defendant Baker County. As a result, Defendant Baker County and Ash are liable for the deprivation of Plaintiff's civil rights, because the unlawful actions were performed or approved by a person in a policymaking position for Defendant Baker County.

402.     Plaintiff suffered damages as a result of Defendant Baker County's policies, customs, and practices.

403.     Plaintiff was harmed as a result of Baker County and Ash's failure to properly train and supervise other Defendants and Baker County officers, and is entitled to injunctive and declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from unreasonable search.

404.     As a direct and proximate result of Baker County and Ash's supervisory negligence, Plaintiff has suffered and continues to suffer the harm and damage described in Paragraph 133 of this Complaint.

405.     Based on Baker City's supervisory negligence, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

406.     Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the First, Second, Fourth and Fourteenth

Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from retaliation for protected speech, and from unreasonable search.

407. Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## EIGTH CLAIM FOR RELIEF

### City Liability: Negligent Supervision (42 U.S.C. § 1983)

### Against Defendants Baker City and Lohner

408. Plaintiff re-alleges and incorporates paragraphs 1 through 407 as though fully set forth below.

409. Baker City and Lohner failed to supervise and train city employees and officers to prevent them from violating Plaintiff's rights.

410. Plaintiff's Complaint shows this claim is based on Baker City's failure to prevent its employees and officers from engaging in retaliatory conduct.

411. Baker City knew, or should have known, about improper conduct by its employees presenting a risk of injury to Plaintiff.

412. The acts and omissions of Defendants under Baker City's supervision deprived Plaintiff of his rights under the First and Fourteenth Amendments to the United States Constitution, which require due process and prohibit retaliation for the exercise of free speech.

413. The acts and omissions of Defendants under Baker City's supervision deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution, which prohibit unreasonable search and seizure.

414. The acts of Defendants under supervision of Baker City deprived Plaintiff of his rights under the Second Amendment to the United States Constitution, which prohibit infringement of the right to keep and bear arms.

415. The acts of Defendants under Baker City's supervision violated Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution, by depriving Plaintiff of equal protection, and due process under the law.

416. Defendant Baker City is liable for the deprivation of Plaintiff's rights, as set forth above, because the defamation and deprivation was pursuant to a City custom, policy or practice of the City and/or its (1) agents retaliating against citizens who criticize law enforcement, or (2) permitting the Police Chief to set law enforcement policy without supervision.

417. At all relevant times, Defendant Lohner had final policymaking authority for BCPD and engaged in the acts alleged herein while acting as a final policymaker for Defendant Baker City. As a result, Defendant Baker City is liable for the deprivation of Plaintiff's civil rights, because the unlawful actions were performed or approved by a person in a policymaking position for Defendant Baker City.

418. Plaintiff suffered damages as a result of Defendant Baker City's policies, customs, and practice, including termination of contracts, interference with his ability to feel secure in his home, papers and possessions, and persisting damage to his health and livelihood.

419. Plaintiff was harmed as a result of Baker City's supervisory negligence.

420. As a direct and proximate result of Ash's unconstitutional violations of Plaintiff's Fourteenth Amendment rights, Plaintiff suffered the injuries described in Paragraph 133 of this Complaint.

421. Based on Baker City's supervisory negligence, Plaintiff is entitled at least to compensatory damages, in an amount to be determined at trial.

422. Plaintiff is also entitled to declaratory relief, including a declaration stating that his rights were violated, and an injunction requiring defendants to impose new policies and training requirements to be consistent with the First, Second, Fourth and Fourteenth Amendments, and, in particular, to recognize, uphold, and protect the right to freedom from retaliation for protected speech, and from unreasonable search.

423. Plaintiff is further entitled to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

### NINTH CLAIM FOR RELIEF

### Freedom of Information Act Violations (5 U.S.C. § 552)

### Against Defendants Baker County, Travis Ash and Jefri Van Arsdall

424. Plaintiff re-alleges and incorporates paragraphs 1 through 423 as though fully set forth below.

425. With respect to Plaintiff's claims under FOIA, 5 U.S.C. § 552, Jefri Van Arsdall is a "person" for purposes of FOIA, 5 U.S.C. § 552

426. With respect to Plaintiff's claims under FOIA, 5 U.S.C. § 552, Travis Ash is a "person" for purposes of FOIA, 5 U.S.C. § 552

427. The failure of Defendants to make a reasonable effort to search for records responsive to Plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

428.    The failure of Defendants to promptly make available the records sought by Plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A) and Defendants' corresponding regulations.

429.    The failure of Defendants to process Plaintiffs' requests expeditiously and as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E).

430.    The failure of Defendants to grant Plaintiff's request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

431.    The failure of Defendants to grant Plaintiff's request for a limitation of fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

432.    Defendants failed to disclose public information to Plaintiff and/or failed to provide public information at a reasonable cost and in a timely manner.

433.    FOIA violations committed by Defendants' acts and omissions have deprived Plaintiff of rights, have harmed Plaintiff, and have exacerbated and amplified harm caused by Defendants' civil violations heretofore laid forth.

434.    At all relevant times, Baker County was final custodian of Baker County records.

435.    At all relevant times, Baker County delegated all custodial duties of law enforcement records to BCSO.

436.    At all relevant times, BCSO was sole custodian of all BCPD records, and custodian of records, in the entirety, of records pertaining to law enforcement and law enforcement activities in Baker County.

437.    At all relevant times, Ash was the final policymaker for BCSO, and final policymaker for Baker County in matters pertaining to law enforcement records.

438. At all relevant times, custodial duties of all Baker County law enforcement records, including all BCPD records, were delegated by Sheriff Ash to Van Arsdall.

439. All of Plaintiff's FOIA requests to Baker County, BCSO and BCPD were administered by Baker County, through BCSO and Sheriff Ash, under the stewardship and responsibility of Van Arsdall.

440. All FOIA correspondence occurred through Van Arsdall.

441. At all relevant times, Ash, as custodian of Baker County law enforcement records, acted under color of law.

442. At all relevant times, Van Arsdall, as delegated steward of Baker County law enforcement records, acted under color of law.

443. The acts and omissions of Defendants pertaining to the Freedom of Information Act violated Plaintiff's rights under 5 U.S.C. § 552, by depriving Plaintiff of public records and/or depriving Plaintiff of timely access to public records at a reasonable cost.

444. The acts and omission of Defendants, as to matters pertaining to law enforcement records, were committed with malice, and with willful disregard for the Freedom of Information Act, and with intentional obstruction and with disregard to the harm such limitations of access and prohibition of disclosure would cause Plaintiff.

445. Baker County is liable for the deprivation of Plaintiff's access to public information, as set forth above, because the obfuscation and deprivation was pursuant to a county custom, policy or practice of the County and/or of its (1) agents withholding records from citizens who criticize Baker County law enforcement, or (2) permitting the Sheriff to set County records disclosure policy without supervision, or (3) selecting and enforcing on the public,

transparency rules, customs or laws separate from, not in accordance with, and selectively, or at all times, superseding FOIA regulations as set forth by Federal statutes.

446.   At all relevant times, Ash had final policymaking authority for BCSO and engaged in the conduct alleged herein while acting as a final policymaker for Defendant Baker County concerning matters of records. As a result, Defendant Baker County is co-liable for the deprivation of Plaintiff's civil rights, because the unlawful actions were performed or approved by a person in a policymaking position for Defendant Baker County.

447.   Plaintiff suffered damages as a result of Defendant Baker County's policies, customs, and practice, including termination of contracts, interference with his ability to feel secure in his home, papers and possessions, and persisting damage to his pursuit of happiness and livelihood.

448.   Plaintiff exhausted the applicable administrative remedies with respect to the wrongful withholding of the requested records and was harmed as a result of Baker County's records policies and the discriminatory and inconsistent administration thereof, and is entitled at least to an award of injunctive relief, and declaratory relief.

449.   As a direct and proximate result of Defendants' custodial FOIA violations, Plaintiff suffered injuries, including financial harm from cost associated with the FOIA requests (required because of Defendants' lack of response), and as described in Paragraph 133 of this Complaint.

450.   Based on Defendants' FOIA violations, Plaintiff is entitled at least to declaratory relief, including a declaration stating that his FOIA rights were violated, and an injunction requiring Defendants to impose new policies and training requirements to be consistent with

Federal FOIA regulations, and, in particular, to recognize, uphold, and protect the right of the public to access public records.

451. Plaintiff is further entitled to restoration of FOIA overcharges, and to an award of all relevant attorney fees, expert fees and costs pursuant to 42 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

452. Plaintiff requests trial by jury.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests judgment against Defendants, and each of them jointly and severally, on all claims for relief as follows:

A. Judgment declaring that the acts of Defendants described in this complaint violated the First, Second, Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, 5 U.S.C. § 552, and an injunction ordering Defendants to cease engaging in the unlawful acts described in this complaint;

B. Fair compensation for damages sustained by Plaintiff as alleged in this complaint, including economic/compensatory and non-economic/special damages, including medical expenses, loss of consortium, loss of income, and past and future impairment of earning capacity; injury to reputation; expenses related to having to relocate out of Baker County for peace of mind and fear of further retaliation; and emotional distress—all in an amount according to proof at trial;

C.      Punitive damages in an amount to be proven at trial;

D.      Prejudgment interest and costs of suit, and attorney fees (as may be applicable) as

permitted by 42 U.S.C. § 1988; and

E.      For such further and other relief as the Court may deem just and equitable.


Dated: <u>April 1, 2021.</u>

<u>s/ Adam David Nilsson</u>, *pro se*
39064 Dubarko Rd.
Sandy, OR 97055
