IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


ADAM DAVID NILSSON,                                    No. 2:19-cv-01250-HL

                          Plaintiff,                   **AMENDED FINDINGS AND**
                                                       **RECOMMENDATION**

        v.

BAKER COUNTY, OREGON; TRAVIS ASH,
an individual; JEFRI VAN ARSDALL, an individual;
GABRIEL MALDONADO, an individual; WILL
BENSON, an individual; ERIC COLTON, an
individual; and Does 1-30,

                          Defendants.
_____

HALLMAN, United States Magistrate Judge:

        This matter comes before the Court on the Baker County Defendants' Motion for

Summary Judgment as to all claims against them in Plaintiff's Second Amended Complaint.

This Court heard oral argument on this motion on April 21, 2022.  ECF 132.  For the following

reasons, Defendants' motion should be denied as to Plaintiff's § 1983 claim alleging that

Defendant Travis Ash obtained a search warrant in retaliation for Plaintiff's exercise of his First

Amendment rights.  Defendants' motion should be granted as to all other claims.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed or viewed in the light most favorable to Plaintiff.  *See* Fed. R. Civ. P. 56(a).

This action stems from an incident at an abandoned concrete plant near Lime, Oregon. (the "Lime Plant").  Pl.'s Second Am. Compl. (SAC), ¶ 20, ECF 32.  The Lime Plant is on private property managed by Baker County.  Declaration of Gabriel Maldonado ("Maldonado Decl.") Ex. 1 at 1-2, ECF 80-1.  There is extensive graffiti art at the Lime Plant, which attracts photographers, tourists, and sightseers.  Declaration of Adam Nilsson ("Nilsson Decl.") ¶¶ 8-9, 11, Ex. 1, ECF 95 (noting examples of graffiti art at the Lime Plant); Maldonado Decl. Ex. 1 at 1-2.  Despite this frequent and open use, the Baker County Sheriff's Office ("BCSO") considered the Lime Plant a safety hazard.  *Id.* at 2.  BCSO posted no trespassing signs on the property and conducted safety checks.  *Id.*

During the time periods relevant to the Complaint, Plaintiff was a resident of Baker County and a member of the Baker City Council.  Nilsson Decl. ¶ 68.  In July 2017, Plaintiff rode his motorcycle to the Lime Plant to view a graffiti art installation by an artist called "Thrashbird."  *Id.* ¶ 8.  Plaintiff posted photos of the installation to his Instagram account along with comments indicating that he believed law enforcement in Baker County did not pay very much attention to the Lime Plant.  *Id.*

On August 1, 2017, Plaintiff and his companion, Ashley Schroeder ("Schroeder"), rode Plaintiff's motorcycle to the Lime Plant.  *Id.* ¶ 11.  They arrived around 7:30 p.m and began taking photos and looking at art.  *Id.* ¶ 12.  Plaintiff spray painted a logo on a block of concrete, and at around 8:40 p.m., Schroeder took a picture of the logo and texted the picture to Plaintiff.  *Id.* ¶ 17.  Shortly after the photo was taken, Plaintiff went to a nearby vantage point and noticed a

vehicle parked near his motorcycle.  *Id.* ¶ 18.  Plaintiff then saw Gabriel Maldonado

("Maldonado"), a BCSO deputy, searching the saddlebags of Plaintiff's Motorcycle.  *Id.*

Maldonado then approached Plaintiff and Schroeder and asked what the two were doing

at the Lime Plant.  *Id.* ¶ 21.  Plaintiff informed him that he was observing the graffiti art, taking

photos, and testing his new silver spray paint.  *Id.* ¶ 22.  Maldonado asked Plaintiff and

Schroeder if they knew they were trespassing, but Plaintiff did not believe that he was

trespassing because he was within the county road easement.  *Id.* ¶ 24.

According to Plaintiff, Maldonado continued to question Plaintiff without listening to his

responses and placed him in handcuffs because Plaintiff stated that he was experiencing anxiety

and feeling lightheaded.  *Id.* ¶ 25.  After being placed in handcuffs, Plaintiff informed

Maldonado that Plaintiff had a concealed weapon, which Maldonado then confiscated.  *Id.* ¶ 26.

The situation continued to escalate, with Schroeder taking a video of Maldonado and then later

being placed in handcuffs herself.  *Id.* ¶¶ 33-34.

BCSO Lieutenant Jefri Van Arsdall ("Van Arsdall") arrived to assist Maldonado.  *Id.* ¶

35.  Plaintiff and Schroeder were placed in separate police vehicles where they remained for

about two hours.  *Id.*; Declaration of Ashley Schroeder ("Schroeder Decl.") ¶ 30, ECF 93.

Maldonado and Van Arsdall requested consent to search Plaintiff's saddlebags, which Plaintiff

eventually agreed to because he felt that he would not be allowed to leave until the search was

conducted.  Nilsson Decl. ¶ 37.   Plaintiff and Schroeder were released after being issued

citations in lieu of custody.  Maldonado Decl. Ex. 1 at 7.  Plaintiff was cited for Criminal

Trespass with a Firearm and Criminal Mischief.  *Id.*  Plaintiff's firearm was seized as evidence.

*Id.*

The next day, Plaintiff and Schroeder met with Sheriff Travis Ash ("Ash") to make an oral complaint regarding Maldonado's allegedly unprofessional behavior.  Nilsson Decl. ¶ 51. The conversation with Ash was recorded.  *Id.*  Ash assigned Lieutenant Will Benson ("Benson") to investigate the complaints brought by Nilsson with respect to the Lime Plant.  Declaration of Will Benson ("Benson Decl.") ¶¶ 3-4, Ex. 1 at 2, ECF 76.

A day later, Benson began his investigation and attempted to get statements from Plaintiff and Schroeder.  *Id.* Ex. 1 at 2-3.  On the advice of an attorney, Plaintiff declined to participate in the investigation.  Nilsson Decl. ¶ 57.  Accordingly, Benson's investigation consisted of formal interviews of the two deputies involved.  Benson Decl. Ex. 1.

During the course of his investigation, Benson uncovered evidence that Plaintiff had been involved in other incidents of graffiti at the Lime Plant.  Declaration of Rich Kirby ("Kirby Decl.") Ex. 1 at 4, ECF 79.  Specifically, Benson found a publicly available video on Plaintiff's social media account that showed a male identified as Thrashbird firing a shotgun at two aerosol paint cans taped to a wall at the Lime Plant while Plaintiff was present.  *Id.*; Nilsson Decl. ¶ 73.

A day later, the Baker City Herald published an article regarding Plaintiff's complaints stemming from the August 1, 2017, incident.  Nilsson Decl. Ex. 14.  The article was based in part on the recording of the oral complaint that Plaintiff made to Ash.  Nilsson Decl. ¶ 55.  That same day, another local media outlet published an article concerning Ash's "battle" with trespassing at the Lime Plant.  Declaration of Travis Ash ("Ash Decl.") ¶ 1, ECF 75.  That article described the safety issues caused by trespassing at the Lime Plant and the potential criminal penalties for individuals who trespass on the site.  *Id.*

The same day, Ash asked BCSO Deputy Rich Kirby ("Kirby") to conduct further investigation of the August 1, 2017, incident at the Lime Plant because Benson's investigation

had revealed that Plaintiff "may have used a firearm while trespassing at the Lime Plant and the criminal mischief crimes may have been related to criminal mischief crimes (graffiti) in Baker City, Oregon." *Id.* ¶ 3. Kirby conducted a subsequent investigation related to Plaintiff's conduct with his firearm, which included reviewing information regarding the August 1, 2017, incident, reviewing publicly available information on Plaintiff's social media pages, and obtaining information from Baker City Police Officer Shannon Regan ("Regan"), which included photographic and video evidence indicating that Plaintiff was engaged in other acts of graffiti. Kirby Decl. Ex. 1 at 1-3.

Three days later, Kirby used this information to apply for a search warrant for Plaintiff's vehicles, person, and property. *Id.* at 1. The search warrant sought permission to search for digital data, written correspondence, computers, phones, cameras, paint, stencils, shotgun, rifle case, etc., and to seize items of any evidentiary value. *Id.* The searchable items related to the crimes of Criminal Trespass with a Firearm, Or. Rev. Stat. § ("ORS") 164.265, and Criminal Mischief II, ORS 164.365. *Id.* Only two categories of items to be seized were temporally limited by dates between August 8, 2015, and August 8, 2017: (1) digital data designed or capable of being used for communication; and (2) any images, audio files, or multimedia files. *Id.* Other evidence, such as paperwork and communications related to the crimes, did not contain a similar time limitation. *Id.* The search warrant was signed by Judge Gregory Baxter on August 7, 2017. *Id.*

Two days later, Benson submitted his investigative report to Ash. Benson Decl. ¶ 5. Benson concluded that Plaintiff's complaints were "unfounded." *Id.* Ex. 1.

That same day, BCSO executed the search warrant. Declaration of Jefri Van Arsdall ("Van Arsdall Decl.") Ex. 2 at 1, ECF 82. Before executing the warrant, Ash, Van Arsdall, and

Regan, met with Plaintiff and Schroeder outside of a local restaurant to discuss the warrant. *Id.*
at 2. Ash read the warrant aloud to Plaintiff, verbatim, while Plaintiff recorded Ash with
Plaintiff's phone. Ash Decl. Ex. 4.

      Van Arsdall, Colton, and Benson searched Plaintiff's truck as required by
the warrant while Plaintiff waited outside the restaurant with Schroeder and Officer Regan. Van
Arsdall Decl. Ex. 1 at 2. Nothing of evidentiary value was in Plaintiff's truck. *Id.* Van Arsdall
returned to Plaintiff and explained that Van Arsdall "needed to seize [Plaintiff's] phone, per the
search warrant." *Id.* Next, Van Arsdall searched Plaintiff's person. *Id.* Officers found nothing
of evidentiary value. *Id.* Plaintiff was told that he could be present at his house during the
execution of the search warrant, but he declined. *Id.* at 3.

      BCSO, with Regan present, searched Plaintiff's residence. *Id.* Regan recorded the
search of Plaintiff's home and retained the video. Ash Decl. Ex. 6-7. Ash also recorded the
search on a tablet, but he did not retain the video. Ash Decl. ¶ 7. The BCSO seized from
Plaintiff's home items related to graffiti, various electronics, legal pads, and a micro-SD card.
Van Arsdall Decl. Ex. 2. Van Arsdall filed the Return of Search Warrant at the Baker County
Circuit Court on August 10, 2017, and he submitted a copy to Plaintiff's criminal case file. *Id.*

      Three weeks later, Plaintiff was charged with Criminal Mischief in the First Degree and
Criminal Trespass with a Firearm. Declaration of Aaron P. Hisel ("Hisel Decl.") Ex. 2 at 1, ECF
78. Less than a month later, Plaintiff plead guilty to Criminal Mischief in the Third Degree, and
the court dismissed the Criminal Trespass charge. *Id.* Ex. 3. Plaintiff was, among other things,
prohibited from entering the Lime Plant and from applying graffiti on public property without
permission. *Id.* Ex. 2 at 2. Plaintiff's firearm and phone were returned per the Amended
Judgment. *Id.* On April 9, 2021, the Baker County Circuit Court issued an order setting aside

Plaintiff's conviction under ORS 137.225. Pl.'s Suppl. Br. Opp'n Defs.' Mo. Summ. J., Ex. 2 at 4, ECF 134.

## PROCEDURAL BACKGROUND

On August 9, 2019, Plaintiff filed this action against Ash and Baker County. Compl., ECF 1.  On April 1, 2021, Plaintiff filed the operative complaint in this action, which is the Second Amended Complaint ("SAC").  ECF 32.  The SAC added Van Arsdall, Maldonado, Benson, and Colton as additional Defendants employed by Baker County ("County Defendants") and also added Baker City, Oregon, as well as Lohner and Regan as Baker City Defendants ("City Defendants").  *Id.*  Plaintiff brings claims against Defendants under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the First, Second, Fourth, and Fourteenth Amendments to the United States Constitution.  *Id.*  Plaintiff also asserts a claim under 5 U.S.C. § 552 for an alleged violation of the Freedom of Information Act.  *Id.*

The City Defendants moved to dismiss the claims against them on the ground that the claims were untimely.  Mot. Dismiss, ECF 57.  The motion was granted, and the City Defendants were dismissed on August 23, 2021.  August 23, 2021, Opinion & Order, ECF 71.

Subsequently, the County Defendants moved for summary judgment on all grounds of the SAC.  County Defs.' Mot. Summ. J. ("Mot. Summ. J."), ECF 74.  The County Defendants advanced multiple arguments for summary judgment:  Plaintiff's claims against the Defendants newly added in the SAC were untimely, Plaintiff failed to serve the newly added defendants, Plaintiff could not show an issue of material fact as to each individual claim, Defendants are entitled to qualified immunity, and Plaintiff's entire suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Id.*  Plaintiff opposed summary judgment on all grounds.  Pl.'s Res., ECF 92.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the initial burden of demonstrating that summary judgment is proper.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  *Id*. at 322-24.  The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256 (citation omitted).

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Id.* at 255.  If direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)).  In addition, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 256.

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  This rule of liberal

construction is "particularly important" in civil rights cases. *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

## DISCUSSION

### I.    Statute of Limitations

Defendants assert that Plaintiff's claims against Defendants Van Arsdall, Maldonado, Benson, and Colton, who were added in the SAC, are untimely because the allegations against those new Defendants do not relate back to the timely allegations in Plaintiff's initial Complaint. Mot. Summ. J. 15-17.  Defendants' arguments are well-taken, and Plaintiff's claims against Defendants Van Arsdall, Maldonado, Benson, and Colton should be dismissed as untimely.

Both the original Complaint, which was filed August 9, 2019, and the First Amended Complaint, which was filed October 6, 2020, named only Baker County and Ash as Defendants. *See* Compl., ECF 1; First Am. Compl., ECF 27.  On April 1, 2021, nearly four years after his detention and citation, Plaintiff filed the SAC, alleging claims for the first time against Defendants Van Arsdall, Maldonado, Benson, and Colton.  ECF 32.  As this Court has already ruled in dismissing the City Defendants, Plaintiff's § 1983 claims are subject to a two-year statute of limitations, and "[i]n the absence of mistake, the addition of the City Defendants in the SAC does not relate back to the original Complaint."  Findings and Recommendation, ECF 66*, adopted by* ECF 71 (citing Fed. R. Civ. P. 15(c)(1) and Or. R. Civ. P. 23(C)).  The same rationale applies with respect to the newly added County Defendants.

Plaintiff does not identify any "mistake" in naming the newly added County Defendants. He acknowledges that Defendants Maldonado[1] and Van Arsdall "were implicated in . . . the

---

[1] Along with the relation back issue, all Maldonado's acts are alleged to have occurred before the expiration of the two-year statute of limitations on August 9, 2017, SAC ¶¶ 20-28, ¶ 364, ¶ 377,

original complaint," Pl.'s Opp'n Defs' Mot. Summ. J. ("Pl.'s Opp'n") 35, ECF 92, and he offers

no basis for not naming them as defendants initially.  Plaintiff asserts that Defendant Benson was

called "a deputy" in the original Complaint because Plaintiff did not learn Defendant Benson's

name until after discovery.  *Id.*  Further, Plaintiff contends that Defendant Colton was

identified—but not named—in the First Amended Complaint when Plaintiff became aware that

he had not read the warrant.  *Id.*  None of these explanations constitute a "mistake" sufficient to

allow for relation back under either the state or federal rules.  *See Hagen v. Williams*, No. 6:14-

CV-00165-MC, 2014 WL 6893708, at *6 (D. Or. Dec. 4, 2014) (explaining that a lack of

knowledge regarding a parties' identity is not a mistake).

    Thus, Plaintiff's claims against Defendants Van Arsdall, Maldonado, Benson, and Colton

are untimely, and the claims against those Defendants should be dismissed with prejudice.

Because the statute of limitations presents a clear bar to Plaintiff's claims against the newly

added defendants, this Court will not consider the County Defendants' alternative arguments for

summary judgment in favor of those defendants.  Instead, this Court will only address the

remaining claims against Defendant Ash and Baker County.

## II.    Plaintiff's First Amendment Claims Against Defendant Ash

    Plaintiff's first claim for relief alleges that all Defendants, including Defendant Ash,

violated Plaintiff's First Amendment rights by conducting the August 9, 2017, search and seizure

in retaliation for his complaints and public statements about the August 2, 2017, incident.  SAC

¶¶ 134-54.  Defendant Ash asserts that he is entitled to summary judgment on Plaintiff's claims

of First Amendment retaliation for three reasons:  First, there are no facts that would show a

---

¶ 385; Maldonado Decl. ¶ 4, and would have been untimely had they been included in the initial
Complaint.  *See Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019).

causal connection between Plaintiff's complaints and the search; second, Plaintiff has failed to

plead and prove an absence of probable cause for the search; and third, Defendant Ash is entitled

to qualified immunity.  This Court disagrees and, accordingly, summary judgment should be

denied to Defendant Ash on Plaintiff's First Amendment retaliation claim.

> ### A.    Factual Disputes Concerning the Retaliatory Search

Government officials are prohibited from retaliating against individuals for exercising

their constitutional rights, including their right to speech under the First Amendment.  *Nieves v.*

*Bartlett*, 139 S. Ct. 1715, 1722 (2019).  "To recover under § 1983 for such retaliation, a plaintiff

must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected

to adverse action by the defendant that would chill a person of ordinary firmness from continuing

to engage in the protected activity; and (3) there was a substantial causal relationship between

the constitutionally protected activity and the adverse action."  *Ballentine v. Tucker*, 28 F.4th 54,

61 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010))

(quotations omitted).

Defendant Ash does not dispute that Plaintiff's complaints about Defendant Maldonado's

conduct constituted constitutionally protected activity.  He also does not dispute that "retaliatory

police action such as an arrest or search and seizure would chill a person of ordinary firmness

from engaging in future First Amendment activity."  *Ford v. City of Yakima*, 706 F.3d 1188,

1193 (9th Cir. 2013) (abrogation recognized by *Ballentine*, 28 F.4th at 54).  Rather, Defendant

Ash focuses on the causation element, and he asserts that there is no genuine issue of material

fact as to whether he was the "but-for cause of the search."  Suppl. Br. Defs.' Mot. Summ. J.

("Defs.' Suppl. Br.") 5, ECF 140.

To demonstrate causation, the "plaintiff must show that the retaliation was a substantial or motivating factor behind" the search. *Ballentine*, 28 F.4th at 63 (quoting *Nieves*, 139 S. Ct. at 1725, 1727) (citation omitted).  In many cases, "establishing the causal connection between a defendant's animus and a plaintiff's injury is straightforward," and courts may take "the evidence of the motive and the [defendant's wrongdoing] as sufficient for a circumstantial demonstration that the one caused the other." *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).  "In assessing whether this causal element is met, courts have also given weight to circumstantial evidence such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action." *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022).

Courts apply a "burden-shifting approach to § 1983 claims of First Amendment retaliation." *Id.*  If the plaintiff can establish a *prima facie* case for First Amendment retaliation, then "the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Id.* (citing *Hartman*, 547 U.S. at 260). "If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Id.*

Here, when the evidence is viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that retaliation was a substantial or motivating factor behind the search. Plaintiff complained of officer misconduct directly to Defendant Ash and in the media, and five days later, he was subject to a search of his person, vehicles, and home.  Moreover, Plaintiff alone encountered this type of search despite the undisputed evidence that many other

individuals often engaged in the same conduct at the Lime Plant.  Finally, Plaintiff has alleged

that Defendant Ash was motivated to retaliate against Plaintiff based on his public criticism of

Baker County's handling of the Lime Plant and his complaints about his treatment by the BCSO.

This evidence is sufficient for a reasonable juror to conclude that retaliation was a substantial or

motivating factor behind the search.

To be sure, Defendant Ash presents a counter-narrative that a reasonable juror could

accept:  The search warrant was requested as a result of an independent investigation, supported

by probable cause, and not done in response to Plaintiff's exercise of his First Amendment

rights.  Ash Decl. ¶ 4.  "However, the possibility that other inferences could be drawn regarding

[Defendant Ash's] motivations that would provide an alternate explanation for [his] actions does

not entitle [him] to summary judgment."  *Ballentine*, 28 F.4th at 63 (quotations omitted).  The

trier of fact could very well credit or disbelieve Defendant Ash's explanations, and summary

judgment would be inappropriate because the evidence does not "permit only one reasonable

conclusion."  *Id.* (quotations omitted).

For these same reasons, Defendant Ash cannot meet his burden of demonstrating that the

alleged retaliation was not the but-for cause of the search.  Defendant Ash asserts that Plaintiff

"fails to demonstrate (or even allege) that [he] had any involvement in Deputy Kirby's decision

to apply for a search warrant."  Defs.' Suppl. Br. 6.  This is incorrect.  Plaintiff alleges that

Defendant Ash's actions—including direct participation in the search—were done in retaliation

for Plaintiff's protected speech.  Nilsson Decl. ¶ 103.  Moreover, it is Defendant Ash's burden to

show that the search would have occurred but for any alleged animus on the part of Defendant

Ash.  *See Boquist*, 32 F.4th at 777.  Defendant Ash cannot satisfy that burden given that he took

Plaintiff's complaints of mistreatment, directly supervised the individual who applied for the

warrant, and personally participated in the search of Plaintiff's residence.  Plaintiff has thus

demonstrated a genuine issue of material fact: whether Defendant Ash retaliated against Plaintiff

for exercising his rights under the First Amendment.

### B.    Plaintiff need not plead and prove the absence of probable cause

Defendants assert that "a plaintiff pressing a retaliatory [search] claim must plead and

prove the absence of probable cause for the [search]."  Mot. Sum. J. 19 (quoting *Nieves*, 139 S.

Ct. 1715, 1724 (2019) (brackets in original)).  They further assert that because probable cause

existed,[2] Plaintiff's retaliatory search claim fails as a matter of law.  *Id.*  This Court disagrees.

Even if the probable cause requirement of *Nieves* is applicable to retaliatory searches,[3]

---

[2] Plaintiff argues that there was not probable cause to believe that he committed the crimes of Trespass and Criminal Mischief. Pl.'s Opp'n, 11.  Because the search warrant was facially valid and approved by a neutral judicial officer, there is no basis for Plaintiff to assert that there was not probable cause for the search.  *See United States v. Leon*, 468 U.S. 897, 921 (1984).

[3] As an aside, this Court is not convinced that Plaintiff must plead and prove the absence of probable cause.  In *Nieves*, the Supreme Court extended the requirement of pleading and proving the absence of probable cause to claims for retaliatory *arrests*.  *See Nieves*, 139 S. Ct. at 1725. *Nieves* was silent on the issue of retaliatory *searches*.  *Id.*  It is not clear that *Nieves* overruled the Ninth Circuit's prior holdings that "actions concerning retaliatory searches[] need not allege and show the absence of probable cause."  *See Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008) (citing *Skoog v. County of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006)).  Further, the Ninth Circuit has recently commented that "*Nieves* abrogated *Ford*, 706 F.3d 1188 and *Skoog* to the extent those cases held that a plaintiff can prevail on a First Amendment retaliatory *arrest* claim regardless of whether probable cause existed for the *arrest*."  *Ballentine* 28 F.4th at 65 n.1 (emphasis added).

This Court is bound to follow the applicable Ninth Circuit precedent concerning retaliatory searches unless *Nieves* "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 632 F. Supp. 2d 968, 975-76 (N.D. Cal. 2009) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).  Although *Nieves* undercut the reasoning of the Ninth Circuit's prior holdings concerning retaliatory searches, there are distinctions between an immediate arrest and a search pursuant to a warrant that could justify differing standards.  *But see Nieves*, 139 S. Ct. at 1725 (concluding that the distinctions between retaliatory prosecution and retaliatory arrest cases were not sufficient to justify only imposing a probable cause requirement in the former).  At the very least, this Court cannot say that the Ninth Circuit's prior precedent is "clearly irreconcilable" with *Nieves*.  *Accord Lybarger v. Snider*, No. 19-CV-369-SPM, 2021 WL 1948435, at *5 (S.D. Ill. May 14, 2021) (concluding based on *Nieves* and *Bailey*

Defendants still need to demonstrate that there is no genuine issue of material fact as to whether the "narrow" exception articulated in *Nieves*, which applies to cases where "officers have probable cause to make arrests, but typically exercise their discretion not to do so," *id.* at 1727, applies in this case. *See* County Defs.' Reply to Pl.'s Resp. ("Defs.' Reply") 11, ECF 109. Because Defendants cannot make that showing, the existence of probable cause cannot defeat Plaintiff's retaliatory search claim as a matter of law.

The exception articulated in *Nieves* applies only "when a plaintiff presents objective evidence that he was [searched] when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *See Nieves*, 139 S. Ct. at 1727. Showing "differential treatment addresses [the] causal concern by helping to establish that non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." *Capp v. County of San Diego*, 940 F.3d 1046, 1056 (9th Cir. 2019) (quoting *Nieves*, 139 S. Ct. at 1727) (quotations omitted).

Plaintiff has presented sufficient evidence to create a material dispute of fact on this issue. To begin with, it is undisputed that individuals frequently committed the same crimes as Plaintiff by trespassing and graffitiing the Lime Plant. Maldonado Decl. Ex. 1 at 1-2. Nevertheless, during the five years before the incident involving Plaintiff, BCSO did not request

---

*v. United States*, 568 U.S. 186, 192 (2013) that "[Probable cause] is a bar to claims for retaliatory arrest, unlawful search and unlawful detention."); *see also Durham v. City of Long Beach*, No. CV2011449JVSJPR, 2021 WL 4816640, at *4 (C.D. Cal. July 2, 2021), *report and recommendation adopted*, No. CV2011449JVSJPR, 2021 WL 4815946 (C.D. Cal. July 28, 2021) (applying *Nieves* to a warrantless search incident to an arrest).

This Court need not resolve this issue, however. Given this Court's recommended disposition—that Plaintiff can satisfy the exception to *Nieves* based on the treatment of similarly situated individuals—the fact that there was probable cause for the search is not dispositive.

any search warrants to investigate these same crimes at the Lime Plant. Nilsson Decl. Ex. 36.[4]

Moreover, Plaintiff has averred that, before his public complaints concerning the Lime Plant,

individuals frequently visited the Lime Plant to paint graffiti without being subject to further

investigation and search. Pl.'s Opp'n 18; Nilsson Decl. ¶¶ 100-20. This evidence is sufficient

for Plaintiff to meet his burden, on summary judgment, to put forth objective evidence from

which a reasonable juror could conclude that he was searched when other similarly situated

individuals were not. *See Ballentine*, 28 F.4th at 62 (relying on records and "plaintiffs' own

experiences" to demonstrate that chalking the sidewalk "rarely results in arrest").

Defendants' arguments to the contrary are unavailing. Defendant Ash asserts that

"BCSO regularly applies for search warrants for all levels of crimes, including misdemeanor

crimes." Ash Decl. ¶ 4. Even if that is correct, not all individuals suspected of misdemeanors

are similarly situated. Rather, this Court must look to the specific conduct at issue to determine

whether an individual is similarly situated. *See Ballentine*, 28 F.4th at 62 (examining the specific

crime at issue).

Defendants also point to the treatment of Thrashbird, identified as Joseph Appel, who

was arrested one month after Plaintiff under similar circumstances and subjected to similar

investigation and prosecution even though he had not made public complaints. *See* Declaration

of Craig Rilee ("Rilee Decl.") Ex. 1 at 17, ECF 112. No search warrant was obtained for his

residence, however, because he lived out of state. *Id.* ¶ 3. Defendant's reliance on Mr. Appel's

similar treatment is misplaced. The fact that one individual who was directly involved with

---

[4] During this time period, BCSO requested two other search warrants "related to citations of
trespass and/or criminal mischief." Nilsson Decl. Ex. 36. One of those warrants was to search a
school bus that was suspected of being used in a hit-and-run. *Id.* at 13-17. The other was a
warrant to search an individual and vehicle allegedly involved in multiple felonies. *Id.* at 18-20.

Plaintiff was later arrested (but not searched) does not defeat Plaintiff's claims. Plaintiff is not required to demonstrate that no similarly situated individual has ever been subjected to the same treatment; rather, he only must demonstrate that "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" searched. *See Nieves*, 139 S. Ct. at 1727. Because there is an issue of fact as to whether Plaintiff can make that showing, Defendant Ash is not entitled to summary judgment based on the presence of probable cause.

      **C.     Defendant Ash is not entitled to qualified immunity.**

      Defendant Ash also asserts that he is entitled to qualified immunity. To overcome qualified immunity, Plaintiff must show that Defendant Ash (1) "violated a federal statutory or constitutional right" and (2) "the unlawfulness of [his] conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotations omitted). As discussed above, Plaintiff has already demonstrated an issue of fact as to whether Defendant Ash violated his First Amendment rights.

      "A government officer is nevertheless entitled to qualified immunity if the plaintiff's rights were not clearly established at the time of the alleged misconduct." *Ballentine*, 28 F.4th at 64. To be "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations omitted). While there need not be "a case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Under this inquiry, we look first to binding precedent. 'If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end.'" *Ballentine*, 28 F.4th at 64 (quoting *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004)).

In *Ballentine*, the Ninth Circuit recently held that "in November 2006, *Skoog* established the First Amendment right to be free from retaliatory law enforcement action even where probable cause exists. *Ford* subsequently held that *Skoog* clearly established this right in November 2006." *Id.* at 66 (internal citations omitted). Moreover, *Skoog* involved a retaliatory search, as does this case. *See Skoog*, 469 F.3d at 1227. *Ballentine* further articulated that the plaintiff need not identify an identical prior retaliation case so long as "'the state of the law at the time g[ave] officials fair warning that their conduct [was] unconstitutional.'" *Ballentine*, 28 F.4th at 66 (quoting *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013)). In *Ballentine*, the fact that the incident was thoroughly investigated, presented to a neutral magistrate, and supported by probable cause was insufficient. *Id.* at 67. Instead, the Ninth Circuit concluded that a reasonable officer would have had fair notice that taking adverse action against the plaintiffs for the content of their speech was prohibited, notwithstanding probable cause. *Id.*

The same analysis applies in this case: Defendant Ash had fair notice that the First Amendment prohibited him from searching Plaintiff's residence in retaliation for his protected speech, notwithstanding the existence of probable cause. Accordingly, Defendant Ash is not entitled to qualified immunity.

## III.    Plaintiff's Fourth Amendment Claims against Defendant Ash

Plaintiff's second claim for relief alleges twelve separate violations of his Fourth Amendment rights stemming from the August 9, 2017, search. Ten of those alleged violations involve Defendant Ash. SAC ¶¶ 155-252. Defendant Ash contends that he is entitled to summary judgment on each of those counts because there is no factual dispute as to whether he exceeded the scope of the warrant. Mot. Summ. J. 22-28. For the following reasons, this Court

agrees, and summary judgment should be granted to Defendant Ash on all of Plaintiff's Fourth Amendment claims.

### A.    Legal Standards for Unreasonable Search

"A police officer generally has qualified immunity for conducting [even] an unconstitutional search if he is acting on the basis of a facially valid warrant." *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991) (citing *Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986)).  There is no indication that the warrant was facially invalid such that "no reasonably competent officer would have concluded that a warrant should issue." *See id.* at 1140 (citing *Malley*, 475 U.S. at 346 n.9).  However, the Fourth Amendment forbids "unreasonable" searches and seizures, and a search may be unreasonable based "not only on when it was made, but also on how it is carried out." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (citation omitted).

As relevant here, a search pursuant to an otherwise valid search warrant is unreasonable under the Fourth Amendment when it exceeds the scope of the area that the warrant authorized to be searched. *See Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."); *United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) ("A warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant.").  Whether a particular search exceeded the scope of a warrant is determine based on an "objective assessment" of (1) "the circumstances surrounding the issuance of the warrant" including "the purpose disclosed in the application for a warrant's issuance"; (2) the contents of the search warrant itself; and (3)

"the circumstances of the search." *United States v. Hurd*, 499 F.3d 963, 966 (9th Cir. 2007) (quotations omitted).

As to qualified immunity, "[t]he law is clearly established that a search may not exceed the scope of the search warrant." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004).

**B.    Seizure of the Legal Pad**

Count One challenges the seizure of a yellow legal pad with Plaintiff's notes, including his notes about the incident at the Lime Plant. SAC ¶¶ 155-62. The legal pad contains at least two pages of notes concerning the incident, as well as other pages and information not pertaining to the incident. Mot. Supp. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J., Ex. 5, ("Pl. Supp. Ex. 5"), ECF 141. The search warrant permitted search of "[c]orrespondence, diaries and any other writing . . . related to crime of Criminal Trespass with a Firearm, Criminal Mischief II." Kirby Decl. Ex. 1 at 8. Defendant Ash was not required to parse through each page of the legal pad to determine which pages directly related to the incident at the Lime Plant. Accordingly, the seizure of the legal pad was not unreasonable, and summary judgment should be granted to Defendant Ash on this claim.

**C.    Seizure of the Micro-SD Card**

Count Two alleges that Defendant Ash exceeded the scope of the search warrant when he seized a micro-SD card containing the recording of Plaintiff's complaint to Defendant Ash. SAC ¶¶ 163-170. The search warrant specifically permitted the search of Plaintiff's digital storage devices. Kirby Decl. Ex. 1 at 8-9. Accordingly, seizing the micro-SD card did not exceed the scope of the warrant, and summary judgment should be granted to Defendant Ash on this claim

### D. Recording of the Search

Count Three alleges that Defendant Ash's recording of the search, and his subsequent failure to produce the video of the search, violated Plaintiff's rights under the Fourth Amendment. SAC ¶¶ 171-189. Plaintiff identifies no authority that would suggest that recording an otherwise lawful search, or failing to produce the video of that search, is a Fourth Amendment violation. Accordingly, summary judgment should be granted to Defendant Ash on this claim.

### E. Seizure of the iPhone and iPad

Counts Four through Nine allege that Defendant Ash's seizure and alleged use of Plaintiff's iPhone and iPad violated Plaintiff's rights in multiple respects. SAC ¶¶ 190-202 (alleging seizure restricted Plaintiff's ability to access personal and business records); *id.* ¶¶ 203-12 (alleging devices contained sensitive personal and medical information); *id.* ¶¶ 213-22 (alleging unauthorized access to the devices); *id.* ¶¶ 223-30 (alleging the deletion of Plaintiff's Instagram account); *id.* ¶¶ 231-39 (alleging seizure of ecclesiastical records); and *id.* ¶¶ 240-252 (alleging seizure of confidential information on Plaintiff's iPad).

Here, the search warrant expressly required the search of Plaintiff's iPad and iPhone. Kirby Decl. Ex. 1 at 8 ("You are hereby commanded to search: [Plaintiff's home, pickup, Motorcycle, and person] TO SEARCH FOR: . . . 6. Computers, laptops, tablets, *iPads*, iPods, *iPhones*, … .") (emphasis added). To that end, BCSO seized Plaintiff's iPad and iPhone, and they were held as evidence as part of Plaintiff's criminal case. Ash Decl. ¶ 6. BCSO has no authority or control over the duration that the District Attorney's office holds evidence in criminal cases. *Id.* Contrary to Plaintiff's allegations, the iPad and iPhone were never accessed

or analyzed while in evidence because his case was resolved by a plea. *Id.*[5]  They were returned

to him on November 21, 2017, after the conclusion of the criminal proceedings.  Maldonado

Decl. Ex. 2.

On this record, Plaintiff cannot demonstrate an issue of fact as to whether Defendant

Ash's seizure of Plaintiff's iPhone and iPad violated his Fourth Amendment rights.  This Court is

mindful that "electronic devices could contain vast quantities of intermingled information,

raising the risks inherent in over-seizing data, [therefore], law enforcement and judicial officers

must be especially cognizant of privacy risks when drafting and executing search warrants for

electronic evidence." *United States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013) (quotations

omitted).  Nevertheless, in the context of a § 1983 claim, this Court cannot question the initial

seizure of the iPad and iPhone, which was specifically authorized pursuant to a facially valid

warrant. *See Barlow*, 943 F.2d at 1139-40.  Moreover, once the iPhone and iPad were seized,

there is no evidence that Defendant Ash accessed the information contained on those devices or

had control of the duration of their seizure.  Accordingly, Defendant Ash's seizure of the iPad

and iPhone was not unreasonable.  Plaintiff's Fourth Amendment claims against Ash should

therefore be dismissed.

## IV.    Supervisory Liability Claims Against Defendants Ash and Baker County

Plaintiff's third claim for relief alleges that Defendant Ash is liable for his subordinates'

alleged violations of Plaintiff's Fourth Amendment rights during the August 9, 2017, search.

SAC ¶¶ 295-351.  Plaintiff alleges that Defendant "Ash was responsible for the training and

---

[5] Plaintiff's iPad was forensically analyzed during the course of the proceedings, and it was
determined that it was not accessed after August 3, 2017.  Nilsson Decl. Supp. Pl.'s Reply to
Defs.' Mot. to Suppl., Ex. 1, ECF 145.  Neither party has presented similar evidence regarding
the use of Plaintiff's iPhone.

supervision of [Defendant] Benson, and for the supervision of all personnel present during the search." SAC ¶ 301. Plaintiff's seventh claim for relief alleges that Defendants Ash and Baker County failed to properly train and supervise their employees, resulting in the alleged violations of Plaintiff's rights. SAC ¶¶ 393-407. Defendant Ash and Baker County contend that they are entitled to summary judgment because there is no factual dispute as to whether they can be held liable for the alleged failure to train and supervise their subordinates. Mot. Summ. J. 33-35. For the following reasons, this Court agrees that Plaintiff fails to demonstrate a genuine issue of material fact as to whether Defendant Ash or Baker County can be held liable for their alleged failures to train and supervise their subordinates.

A. **Legal Standards**

With respect to Baker County, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, a municipality is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Local government liability may exist without any formal policy permitting the challenged conduct where the local government has a "longstanding practice or custom [that] constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quotations omitted).

In narrow circumstances, a local government's failure to train its employees may be considered a policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a deliberate

indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983."). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Defendant Ash may only be held liable as a supervisor under § 1983 "'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite showing can be established by demonstrating that the supervisor: (1) set in motion a series of acts by others or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict constitutional injury; (2) had his or her own culpable action or inaction in the training, supervision, or control of his or her subordinates; (3) acquiesced in the constitutional deprivation by subordinates; or (4) engaged in conduct that shows reckless or callous indifference to the rights of others. *Id.* at 1207-08. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of [the plaintiff's] civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A supervisor might be liable despite not personally participating in the alleged deprivation if the supervisor "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).

### B.    Baker County

As to Defendant Baker County, Plaintiff fails to identify any policy statement, ordinance, regulation, or decision officially adopted and promulgated by Defendant Baker County that resulted in any alleged violation of his rights.  Although Plaintiff alleges that the various violations of his rights stemmed from Defendant Baker County's failure to train its employees, Plaintiff presents no evidence of similar constitutional violations by untrained employees.  Indeed, Plaintiff claims just the opposite:  he claims that he was "singled out" for retaliatory treatment.  SAC ¶ 98.  Accordingly, even if Plaintiff could demonstrate that his rights were violated, he cannot demonstrate that Defendant Baker County is liable for that violation.  The Court should therefore grant summary judgment to Defendant Baker County.

### C.    Defendant Ash

Similarly, Plaintiff cannot demonstrate that Defendant Ash, as a supervisor, is liable for the actions or inactions of his subordinates.

As for Count One, Plaintiff alleges that Defendant Ash's failure to train and supervise his subordinates resulted in Defendants Benson and Regan's review of a binder that contained information outside the parameters of the search warrant.  Even if Defendants Benson and Regan's actions went beyond a permissible "cursory review" of documents to determine their relevance, *see Andresen v. Maryland*, 427 U.S. 463, 482, n.11 (1976), there is no evidence that Defendant Ash knew of or acquiesced to this specific action.  Indeed, the video evidence demonstrates that Defendant Ash *declined* to seize this notebook.  Ash Decl. Ex. 7 at 24:03.

With respect to Count Two, Plaintiff alleges that Defendant Ash's failure to train and supervise Defendant Colton resulted in his search of the property without having read the warrant.  This claim fails as a matter of law, as Defendant Ash was under no obligation to ensure

that his subordinates had personally read the warrant.  *Guerra v. Sutton*, 783 F.2d 1371, 1375

(9th Cir. 1986) ( "it was not necessary for all or even any of the . . . defendants to actually see the

warrant" because "[l]aw enforcement officers and agencies are entitled to rely on one another").

Finally, with respect to Count Three, Plaintiff alleges that Defendant Ash allowed Regan

to search for items not related to the investigation.  SAC ¶¶ 328-51.  To be sure, Regan's

statements during the search at the very least created some ambiguity as to her role in the search

and whether she was also searching for items related to a separate case.  *See* Ash Decl. Ex. 7;

Pl.'s Opp'n 26.  Nevertheless, there is no evidence that Ash knew of or acquiesced to Regan

searching for evidence beyond what was permitted by the warrant.  The only evidence that

Plaintiff identifies that Regan viewed that went beyond the warrant was the binder referenced in

Count Two, which, as previously noted, Defendant Ash declined to seize.  Accordingly,

Defendant Ash cannot be held liable for Regan's actions under a theory of supervisory liability.

## V.    Procedural Due Process Claim

Plaintiff's fourth claim for relief alleges that Defendant Ash violated Plaintiff's

procedural due process rights by conducting a retaliatory search rather than investigating his

allegations of misconduct.  SAC ¶¶ 362-73.  This claim fails as a matter of law.  "Once probable

cause is established, 'an officer is under no duty to investigate further or to look for additional

evidence which may exculpate the accused.'" *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir.

2013) (citing *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)).  However, an "officer may

not deliberately omit facts that would otherwise negate a showing of probable cause." *Id.*  Here,

there is no evidence that Defendant Ash deliberately omitted any facts from the search warrant

that would have negated the finding of probable cause.  Defendant Ash was not the individual

conducting the investigation, and there was no evidence available that would have negated the

finding of probable cause.  Accordingly, Plaintiff's procedural due process claims should be dismissed.

## VI.    Second Amendment Claim

Plaintiff alleges that Defendant Ash violated Plaintiff's Second Amendment rights by suspending his concealed handgun license after he pleaded guilty.  SAC ¶ 386.  Defendant Ash is entitled to summary judgment on this claim.

ORS 166.291(1)(h) provides that "[t]he sheriff of a county . . . shall issue the person a concealed handgun license if the person . . . [h]as not been convicted of a misdemeanor or found guilty[] . . . of a misdemeanor within the four years prior to the application . . . ."  Defendant Ash's compliance with this statute did not violate Plaintiff's clearly-established rights.  "[T]he Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding* citizen to possess a handgun . . . for self-defense."  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022) (emphasis added).  The Second Amendment does not prohibit the government from imposing firearm restrictions on individuals who fail to follow the law and are convicted of a crime.  Although there may be some outer limit to the government's ability to place firearm restrictions on individuals convicted of minor offenses, *see Voisine v. United States*, 579 U.S. 686, 715 (2016) (Thomas, J., dissenting), there is no authority to support Plaintiff's contention that the government's imposition of a four-year concealed carry restriction after a misdemeanor conviction violated the Second Amendment.  Accordingly, Defendant Ash should be granted summary judgment on Plaintiff's Second Amendment claim.

## VII.    Freedom of Information Act Claim

Plaintiff's ninth claim for relief alleges that Defendants Ash and Baker County violated Plaintiff's rights under the Freedom of Information Act ("FOIA") by failing to make certain

records available.  SAC ¶¶ 424-451.  This claim fails as a matter of law.  "FOIA, generally, provides for the mandatory disclosure of information held by federal agencies . . . ." *St. Michael's Convalescent Hosp. v. State of Cal.*, 643 F.2d 1369, 1372 (9th Cir. 1981).  It does not apply to political subdivisions and elected officials of the State of Oregon.  Even if this Court were to construe Plaintiff's claim as an action under Oregon's Public Records Law, ORS Chapter 192 *et. seq.*, such an action could be brought only by "the person seeking disclosure." *See* ORS 192.415 (referencing ORS 192.411).  Here, Plaintiff was not the individual who requested the records that were allegedly withheld.  Hisel Decl. Ex. 5.  Accordingly, Plaintiff lacks standing to bring a claim that Defendants Ash and Baker County improperly denied the records request.

## VIII.    *Heck v. Humphrey*

Defendants initially asserted that Plaintiff's claims are barred by *Heck v. Humphrey* because success in this § 1983 action would implicate the invalidity of his criminal conviction. Mot. Summ. J. 36-37.  Plaintiff responded that this action does not seek to invalidate his conviction because he successfully petitioned the Court for an order setting aside his conviction under ORS 137.225.  Pl.'s Opp'n 41-42; Pl.'s Suppl. Br. Supp. Resp. Opp'n Defs.' Mot. Summ. J. 8, ECF 134; Defs.' Reply. 33-34 (referencing statute).[6]

In *Heck*, the Supreme Court addressed "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983."  *Heck*, 512 U.S. at 478.  "[A] court must dismiss a § 1983 claim if (1) it seeks to recover damages for 'harm caused by actions whose unlawfulness would render a conviction or sentence invalid' and (2) the

---

[6] In supplemental briefing, Defendants acknowledged that Plaintiff's First Amendment retaliation claim was not barred by *Heck* in light of the order setting aside his conviction, but Defendants continued to maintain that Plaintiff's other claims are barred.  Defs.' Suppl. Br. 9-10.

plaintiff cannot show that 'the conviction or sentence has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such a

determination, or called into question by a federal court's issuance of a writ of habeas corpus.'"

*Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1054 (9th Cir. 2016)

(quoting *Heck*, 512 U.S. at 486-87).  As relevant here, where "a § 1983 plaintiff's conviction is

vacated by a state court, that conviction has been "declared invalid by a state tribunal authorized

to make such determination[.]"  *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1203 (9th Cir.

2020).

An order setting aside a conviction under ORS 137.225 qualifies as a favorable

termination under *Heck.*  The statute "provides a mechanism for certain defendants, under

specific circumstances, to have a record of arrest and a criminal conviction set aside."  *State v.

Singleton*, 317 Or. App. 49, 50-51 (2022).  "Upon the entry of the order, the applicant for

purposes of the law shall be deemed not to have been previously convicted . . . , and the court

shall issue an order sealing the record of conviction[.]"  ORS 137.225(3).  Because Plaintiff's

conviction was set aside under ORS 137.225, this Court concludes that his claims are not barred

by *Heck*.  Defendants' motion on this basis should therefore be denied.

## RECOMMENDATION

Defendants' Motion for Summary Judgment, ECF 74, should be DENIED as to

Plaintiff's § 1983 claim alleging that Defendant Ash obtained a search warrant in retaliation for

Plaintiff's exercise of his First Amendment rights.  Defendants' motion should be granted as to

all other claims.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 21st day of November, 2022.

ANDREW HALLMAN
United States Magistrate Judge